IN RE ESTATE OF MARIA E. HAGAR.

October Term, 1924.

Present: WATSON, C. J., POWERS, TAYLOR, SLACK, and BUTLER, JJ.

Opinion filed November 6, 1924.

*Adoption—Property Rights Not Acquired by Adoptee in Adopter's Property During His Lifetime—Right to Take Property by Devise or Descent Statutory—Constitutional Law—Constitutional Guaranties of Property Rights Ceasing at Death of Possessor—Taxation—Right of Legislature to Change Policy of Inheritance and Collateral Taxation—Inheritance and Transfer Taxes Not Property Taxes—*

*Statute Imposing Inheritance Tax on Child Adopted After Majority Valid—Statute in Force at Time of Death of Owner Governs Disposition Estate.*

1. In a case of adoption, whether relation between adopter and adoptee be considered as contractual or judicial in nature, the adoptee by reason thereof does not acquire any right in adopter's property during his lifetime, nor at his decease, if he chooses to devise it to others.

2. The right to take property by devise or descent is not a natural, but a statutory right, and is subject to legislative change at any time before the death of the owner.

3. Constitutional guaranties to citizens, contained in Ch. I, art. 1, of the Constitution, relating to the right of acquiring, possessing, and protecting property, including right of disposal, cease to operate at the death of the possessor.

4. While the general policy of law in Vermont has been to allow collaterals to inherit, in default of lineal descendants, and to allow disposal of estates by will, the Legislature may either change this policy, or, if it chooses, retain such general policy, and annex to the privilege of taking a decedent's property, by descent or will, such conditions, within certain limits at least, as it deems wise.

5. Inheritance and transfer taxes are not taxes upon property, but rather in the nature of a condition annexed to the privilege accorded by the State to members of the body politic of taking property, by devise or descent, that formerly belonged to another.

6. Classification contained in G. L. 1090, 1093, whereby adopted children are required to pay collateral inheritance and transfer taxes, unless adopted during minority, held to have sanction in reason, and not to be objectionable on any constitutional grounds.

7. The right of one person to inherit the property of another vests at the death of the latter, and the statute in force at that time rather than one in force at a prior or subsequent date governs disposition of estate, this rule being also applicable to determination of right of adopted children to share in estate of adoptive parents.

8. G. L. 1090, 1093, requiring adopted children to pay collateral inheritance and transfer taxes, unless adopted during minority,

in force at time of death of adoptive parent, *held* applicable rather than P. S. 822, as amended by Acts 1908, No. 31, § 1, and P. S. 823, which were in force when adoption occurred.

CERTIFICATION to the Supreme Court under G. L. 1103, upon written application of Commissioner of Taxes and executrix of will of Maria E. Hagar, of findings and decree of probate court, district of Chittenden, *J. H. Macomber*, Judge, for construction of a part of Chapter 49, General Laws. *Decree affirmed.*

*Guy M. Page*, for the estate.

*Fred B. Thomas*, Commissioner of Taxes, for the State.

SLACK, J.   This case involves the right of the State to collect certain collateral inheritance and transfer taxes. The State prevailed in the probate court wherein the settlement of the estate is pending, and that court certified the case here pursuant to the provisions of G. L. 1103.

The agreed facts are these: On February 5, 1909, Maria E. Hagar, then, and until her death, an inhabitant of the city of Burlington, this State, by an instrument recorded in the probate court for the district of Chittenden, agreeably to the provisions of the statute, "adopted as her children," Henry H. Hagar and Mary L. Hagar, each of whom had then attained the age of majority. The adoptees were nephew and niece, respectively, of the adopter. On August 2, 1917, Maria E. conveyed to the said Henry H., by deeds of warranty, two pieces of real estate situate in the city of Burlington, reserving to herself the use, rents, and profits thereof during her natural life. She died on, or about, August 1, 1923. By her last will and testament, executed August 3, 1917, and duly probated in the district of Chittenden, she devised and bequeathed to the said Henry H. and Mary L. all of her estate of every kind and nature.

The statute relating to the rights and duties of adopted children in force February 5, 1909, and at the time Maria E. died, provided that "the same rights, duties and obligations and the same right of inheritance shall exist between the parties as though the person adopted had been the legitimate child of the person or persons making the adoption," except in certain in-

stances not here material.  G. L. 3762.  The statutes relating to collateral inheritance and transfer taxes, in force at the time of the adoption in the instant case, did not require adopted children to pay such taxes.  See P. S. 822 as amended by No. 31, § 1, Acts 1908, and P. S. 823.  The statutes relating to such taxes in force at the time Maria E. died did require such children, unless adopted during minority, to pay such taxes.  G. L. 1090, 1093.

The appellant, who is executrix under the will of the deceased, contends that the State is not entitled to collateral inheritance or transfer taxes on account of the property granted, devised, and bequeathed as above mentioned, because, to quote from the record, "the adoption was a contract which gave to the beneficiary under the will the status as to inheritance so far as this estate is concerned of natural legitimate children and that there is no valid tax classification which distinguishes between a tax on inheritance by them as against natural legitimate children with (out) impairment of the status created by their contract and that the impairment of that status is forbidden by the Constitution.  That therefore section 1090 should be construed to apply only to adoption made after its enactment and not to this adoption made prior to the inclusion of children adopted after majority within its terms."  In other words, the claim is that the relation between the parties created by the adoption was contractual in nature, and since the statute gave the adoptees the same right of inheritance, as between the parties, as legitimate children they stand on the same footing as such children so far as succession taxes are concerned, and that the act of 1910, No. 55 (G. L. 1090), is unconstitutional because it impairs their contractual rights.

[1]  This claim is untenable.  Whatever the relation between the adopter and the adoptees may have been, that is, whether contractual or judicial in nature, the adoptees, by reason thereof, acquired no right in the adopter's property during her lifetime, nor at her decease, if she willed otherwise, for she still had authority to devise it to whomsoever she chose.  She could do so without violating the legal rights of legitimate children, and, certainly, the adoptees stood in no better position.

[2]  The right to take property by devise or descent is not a natural, but a statutory right (*In re Hickok's Estate*, 78 Vt. 259, 62 Atl. 724, 6 Ann. Cas. 578; *Gilman* v. *Morrill*, 8 Vt. 74; *Magoun* v. *Illinois Trust & Savings Bank*, 170 U. S. 283, 42 L.

ed. 1037, 18 Sup. Ct. 594; *Minot* v. *Winthrop,* 162 Mass, 113, 38
N. E. 512, 26 L. R. A. 259; *State* v. *Hamlin et al.,* 86 Me. 495, 30
Atl. 76, 25 L. R. A. 632, 41 A. S. R. 569; *Kochersperger* v.*Drake,*
167 Ill. 222, 47 N. E. 321, 41 L. R. A. 446; *Eyre* v. *Jacob,* 14
Grat. [Va.] 430, 73 A. D. 367; *Strode* v. *Commonwealth,* 52 Pa.
181; 2 Bl. Comm. pp. 10, 13; 9 R. C. L. pp. 14, 15), and, there-
fore, subject to legislative change at any time before the death of
the owner.

[3]    While our Constitution guarantees to the citizens the
right of acquiring, possessing, and protecting property (Ch. I,
art. 1), which includes the right of disposal, the guaranty ceases
to operate at the death of the possessor.    There is no provision
of our Constitution, or that of the United States, which secures
the right to any one to control or dispose of his property after
his death, nor the right to any one, whether kindred or not, to
take it by inheritance.    And, so far as we are aware, the State
has not parted with its authority to regulate the succession of
property in any instance.    That its authority in this respect
over the property of persons who become parties to adoption
proceedings is not taken away, or limited, by the statutory pro-
vision conferring upon such persons the right as ''between the
parties'' of inheriting from each other is too obvious to require
further notice.

[4]    It has always been the policy of our law to allow col-
laterals to inherit, in default of lineal descendants, and to allow
the disposal of estates by will, which take effect only at the death
of the owner, when his ownership has ceased, but the policy may
be changed if the Legislature so determines; or the Legislature
may, if it choses, retain this general policy, and annex to the
privilege of taking a decedent's property, by descent or will,
such conditions, within certain limits at least, as it deems wise.

This, and no more, is precisely what the Legislature
attempted to do by the statute under consideration; and we think
it acted well within its authority unless the classification upon
which the statute rests is open to constitutional objections.

[5]    In considering this question, it should be borne in mind
that taxes of this character are now universally conceded not to
be taxes upon property, but rather in the nature of a condition
annexed to the privilege accorded by the State to members of
the body politic of taking property, by devise or descent, that
formerly belonged to another (*In re Hickok's Estate, supra*),

—property to which their sole title rests upon legislative sanction. Then, too, the tax or condition imposed by this statute is uniformly imposed upon all persons similarly situated, namely, all adopted children who have attained their majority at the time of adoption; and, finally, the tax does not appear to be plainly and grossly oppressive in amount.

[6] That there is no constitutional objection to placing lineal descendants and collaterals in different classes, which subjects them to different conditions, is now firmly established. *Minot* v. *Winthrop, supra; State* v. *Alston,* 94 Tenn. 674, 30 S. W. 750, 28 L. R. A. 178; *Kochersperger* v. *Drake, supra;* 37 Cyc. 1556; 26 R. C. L. 200. This classification, it is said, has sanction in reason, for the moral claim of collaterals is less than that of kindred in the direct line and the privilege of the former is, therefore, greater than that of the latter. See numerous cases collected in 26 R. C. L. 200. It logically follows that strangers in blood, having no moral claim whatever based on kinship, may be legally placed in a class by themselves, even though by adoption they are given the status, as between the parties, of natural children. And, manifestly, if the adoption does not take place until after the adoptee has attained the age of majority the reason for distinguishing between him and natural children is even greater. A child adopted during minority, especially if of a tender age, ordinarily becomes a member of the adoptive parents' family in a very real sense. If he receives the care and nurture due him and gives in return the honor and obedience to be expected, there develops mutual feelings of consideration and affection akin to those that exist between the parent and the natural child. In fact, all the rights and duties incident to the relation of parent and child exist between such child and its adoptive parents. As the scion becomes part of the tree upon which it is grafted so the child, adopted in early life, becomes part of the family into which he is received.

The situation is entirely different in the case of one adopted after attaining the age of majority, after he has become "his own man," so to speak, at liberty to go when and where he choses, and seldom becoming a member of the adoptive parents' family in the real sense of the term. Ordinarily such adoptions are dictated wholly, or in a very large measure, by financial considerations.

We think the classification in the present statute "has sanc-

tion in reason" abundantly sufficient to meet all constitutional requirements.

[7]  The appellant contends that the Act of 1910 should be construed to apply only to adoptions made after its enactment, which would leave the adoptees unaffected by the change.  To this we cannot agree.  The rule is well settled that since the right of one person to inherit the property of another vests at the death of the latter, the statute in force at that time rather than the one in force at a prior or subsequent date governs the disposition of the estate.  18 C. J. 808; 9 R. C. L., p. 16.  And by the same rule the right of adopted children in the estate of adoptive parents is determined.  *Sorenson* v. *Rasmussen*, 114 Minn. 324, 131 N. W. 325, 35 L. R. A. (N. S.) 216; *Gilliam* v. *Guaranty Trust Co.*, 186 N. Y. 127, 78 N. E. 697, 116 A. S. R. 536; *Theobald* v. *Smith*, 103 App. Div., 200, 92 N. Y. S. 1019; *Dodin* v. *Dodin*, 16 App. Div., 44 N. Y. S. 800.

In *Sorenson* v. *Rasmussen*, the sole question was whether the right of adopted children to take the estate of the adoptive parent as heirs at law was governed by the statute in force at the time of adoption or by the statute in force at the time of the parent's death.  Under the former, such children did not take; under the latter, they did.  The latter was held to govern.  The court said: "It is urged that to apply this statute to all adopted children makes it retrospective, and that such construction should not be given the law unless it clearly appears that it was so intended by the enacting body.  We do not think this statute falls within the class of laws to which this rule of construction contended for by appellant is frequently and properly applied.  This statute does not give the past acts a new effect upon mutual rights or liabilities.  Nor does it change or affect existing rights.  Rights of inheritance in an estate do not accrue until the death of the owner intestate.  A law providing for the future descent of property is prospective.  The statute in question, at its passage, related to future inheritances by adopted children.  It conferred or took away no present right.  A law of inheritance making a change in a prior law as to adopted children—a numerous, permanent, existing class of persons—does not differ in principle from a law making a change in the rules of inheritance of property by force of the relationship of husband and wife or through the relationship between other classes, and no different

16 .

rule of construction of a statute effecting such change is required.''

In *Gilliam* v. *Guaranty Trust Co.*, it is said: ''It is too well established to require any discussion that the relationship of appellants to Mrs. Thomas, which originally made them her heirs at law, did not confer any vested right during the life of the sister to the continuance of such heirship, but that the legislature had the power to change this and provide for a different line of inheritance; also, that a child adopted under the provisions of the act of 1873, giving no right of inheritance, is entitled to the benefit of the statute enacted subsequently to the adoption conferring such right.''

While it is true that in these cases the statute in question enlarged rather than restricted the rights of the adopted children, the principle involved was the same since by so doing the effect, necessarily, was to diminish, or destroy altogether, rights that some one else would otherwise have enjoyed.

[8]    It must be held that the question before us is governed by the statute in force at the time of the testator's death.

With the cases cited by the appellant which hold that vested rights cannot be interfered with by legislative enactment, we are in full accord; but enough has been said to show that they have no application to the case before us. The cases cited by the appellant to the proposition that the adoptees are entitled to the same immunity to taxation as children born in lawful wedlock merely show that the statutes under consideration in those cases were held to have that effect; but the constitutionality of those statutes was not involved, hence the cases are not authority for the proposition that the statute here in question is unconstitutional.

*The decree of the probate court is affirmed with costs. Let the result be certified to the probate court.*