IN RE ESTATE OF JENNIE GRINNELL.
JOSEPH B. REDFIELD ET AL., APPPELLEES, V. GEORGE WIXON, APPELLANT.

FILED JULY 2, 1928.   No. 26094.

*John P. Breen* and *Magney & Magney*, for appellant.

*Nickerson & Nickerson* and *William R. Patrick, contra.*

Heard before GOSS, C. J., DEAN, GOOD, EBERLY and HOWELL, JJ.

GOSS, C. J.

George Wixon appeals from a final order of the district court decreeing that John B. Grinnell and Joseph B. Redfield are his co-heirs at law of Jennie Grinnell, deceased, affirming the judgment of the county court to the same effect in the final decree and distribution of her estate.

The appellant is a son of Jennie Grinnell by a prior marriage. She died intestate on May 19, 1925. Her husband, Adelbert Grinnell, died intestate March 9, 1924. Wixon contends that he is her only heir. John B. Grinnell and Joseph B. Redfield were adopted by Adelbert Grinnell and Jennie Grinnell by proceedings in the county court of Sarpy county, Nebraska, ending in a decree of adoption Septem-

ber 20, 1884. They are twins and were born August 23, 1882. They contend that, under their adoption and under the laws relating to inheritance, they are entitled to take as heirs of Jennie Grinnell.

John B. Grinnell, now of St. Louis, lived with his foster parents until about 1919, when he left Sarpy county. When the boys were seven or eight years old, they went to Box Butte county, where their foster parents took up a homestead and where they lived about six years. The appellant remained out there and married, but the Grinnells and the two younger boys returned to Sarpy county. When John B. Grinnell was 12 years old he heard a rumor one day in school that he and his brother were adopted children and the first real knowledge he had of it was from his mother (Mrs. Grinnell) on his return from school that day. John B. Grinnell attended the Nebraska Agricultural College for two years, and after he came home and took up the farm work in place of Joseph the latter went to the University, worked his way through and was graduated in the medical department. Until he was 25 or 26 years old he went back during the summer months and assisted with the farm work. He never knew until about the time he went to the University, when 19 or 20 years old, that he was an adopted child. He had an older brother, Willis Redfield, a physician, likewise an adopted child, who had gone by the name of Ryan but had assumed his original name. This brother invited him to go into partnership with him at North Platte and suggested that he assume his original name of Redfield, to do away with explanations, which he did, and the two practice medicine there together. We take pleasure in saying that there is no indication in the record, the briefs or in the oral argument to show other than the finest filial relations between the adopted children and the adopting parents, nor is there any suggestion of ill feeling between the adverse parties to this suit. When Adelbert Grinnell, the adoptive father, died, Jennie Grinnell, the adoptive mother, filed a petition in the county court reciting that the appellees were sons and heirs and

requested that John B. Grinnell be appointed as administrator. He acted as such and the final decree ordered their certain shares of the estate remaining to be distributed to appellees as heirs of the deceased.

The mother, Catherine Redfield, widow of Willis C. Redfield, had the lawful control of the children at the time of their adoption. The law governing adoptions in force in 1884 when these two children were adopted is found in General Statutes, 1873, ch. 57, secs. 796 to 801. Section 797 required from the mother a statement in writing before the probate judge where the parties desiring to adopt a child reside that she voluntarily relinquished all right to the custody of and control over such child and all claim and interest to the services and wages of such child "to the end that such child shall be fully adopted by the party or parties (naming them) desiring to adopt such child, which statement shall be signed and sworn to by the party making the same, before said probate judge, in the presence of at least two witnesses; and the person or persons desiring to adopt such child shall also make a statement in writing, to the effect that he, she, or they freely and voluntarily adopt such child (naming him or her) as their own, with such limitations and conditions as shall be agreed upon by the parties, which said statement shall also be signed and sworn to by the parties making the same before said probate judge, in the presence of at least two witnesses: Provided, in all cases where such child shall be of the age of fourteen years and upward, the written consent of such child shall be necessary to the validity of such proceeding: And provided further, whenever it shall be desirable, the party or parties adopting such child may, by stipulations to that effect in such statement, adopt such child, and bestow upon him or her equal rights, privileges, and immunities of children born in lawful wedlock, and such statement shall be filed with and recorded by said probate judge, in a book kept in his office for that purpose."

Section 800 is as follows: "All decrees entered in such

case in conformity with the provisions and requirements of this chapter, shall be conclusive upon all the persons interested in such proceedings or matter, and the child or children thus adopted shall take the surname of the person or persons adopting the same, and all relations of parent and child, agreeably to such stipulations and the decree of the probate court, shall attach, and such child or children, if so stated in such decree, shall be subject to the exclusive control and custody of such parent or parents, and shall possess and enjoy all the rights, privileges, inheritance, heirships, and immunities of children born in lawful wedlock."

Catherine Redfield executed her statement in the proper form and the Grinnells duly executed theirs, a portion of which we quote: "Now comes the said A. Grinnell and Jennie Grinnell and represent to the court that they are residents of the county of Sarpy and state of Nebraska and that they are husband and wife; that they have seen and know John B. Redfield and Joseph B. Redfield, the minor children of Catherine Redfield, and they are desirous of adopting said minor children and agree and promise the said mother of said children that, in consideration of relinquishment of any and all interest or right to said children, and their services, they will adopt said children as their own and said children will assume the name of adopting parents, and will provide for them in sickness and health, suitable food and clothing and use their endeavors to teach or cause them to be taught in the rudiments of an English education."

On a hearing a decree was entered by the county judge, from which we abstract the following: "It is ordered, adjudged and decreed by me that the rights to the custody of and possession, power and control over the persons of the said John B. Redfield and Joseph B. Redfield by Catherine Redfield, their mother, shall cease from this date, and that the said John B. Redfield and Joseph B. Redfield shall be the adopted children of the said A. Grinnell and Jennie Grinnell, according to the several

statements made herein; and it is further ordered and decreed that the name of said children from and after this date shall be John B. Grinnell and Joseph B. Grinnell and that the said children shall be instructed in the rudiments of an English education."

In 1897 the legislature passed an act to provide for the adoption of minor children and repealed sections 796 to 801, as previously existing. Laws 1897, ch. 94. Section 9 of the act is carried forward into section 1572, Comp. St. 1922, without change, except those arising by reason of minor typographical editing, in the following words: "Unless the terms and conditions in such consent and petition otherwise provide, the person or persons adopting, and the child adopted shall after adoption, sustain toward each other the usual relation and the adopted child shall have bestowed upon him or her equal rights, privileges and immunities of children born in lawful wedlock, of parent and child, and shall have all the right and be subject to all the duties of that relation, and the parents of such adopted child shall thereafter stand relieved of all parental duties toward, and all responsibility for, said minor child, and shall have no right over it."

The only controversy in this case is one of law. It depends on the proceedings and the law in effect in 1884, at the time of the adoption, and the later change of that law in 1897, prior to the death of Jennie Grinnell. The appellees contend that by the decree of adoption and by estoppel alleged against Jennie Grinnell and forwarded as against her natural son, the appellant, they had the right to take their distributive shares of her estate irrespective of the act of 1897; and that, under the latter act, the legislature gave them the right to inherit if they did not already have it. On the other hand, the appellant takes issue on both contentions. He admits that the adoption in 1884 was effective in all respects save to clothe the appellees with the right to inherit; he claims their status was fixed so that they could not inherit, and he asserts that the act of 1897 does not apply to them and

was not intended by the legislature to apply to those already adopted prior to its passage. In his briefs and in the oral argument he declared that, if the act of 1897 is operative so as to change what he regards as the fixed status of the appellees, it would end the case. So we examine that proposition first.

The effect of the act of 1897, in some of its phases, was recently before us for determination. There was involved the question whether the natural father should inherit from his son or whether the adoptive mother of the decedent should inherit to the exclusion of the natural father. The adoption of the child took place after 1897 and of course his estate devolved later. We held that, in the case of the unrestricted adoption of a minor child, section 1572, Comp. St. 1922 (the 1897 act), confers on the adopted child and the adoptive parent the right to inherit, each from the other. The first three paragraphs of the syllabus read as follows:

"The statutes of Nebraska relating to the adoption of minor children contemplate two kinds of adoption; one an unrestricted adoption; the other an adoption restricted by the terms and conditions set forth in the petition for and consent to adoption.

"If no terms or conditions are contained in the petition for or consent to the adoption of a minor child, then the adoption is unrestricted, and the rights of the adopted child and adoptive parent are governed by the provisions of section 1572, Comp. St. 1922.

"The right to inherit property of a deceased person is created by statute. The legislature may confer upon adopted children and adoptive parents the right to inherit, each from the other."

In the body of the opinion, relating to the last point of law just quoted, we said:

"The right of inheritance is created by statute. It is within the power of the legislature to determine what persons or whether any person shall inherit from one who dies intestate, and to determine what proportion of the

decedent's estate shall descend to any particular person or class of persons. The legislature creates and may take away the right to inherit. It is within the power of the legislature to confer the right of inheritance upon adopted children or adoptive parents, as well as upon natural children and parents. If there are no restrictions, limitations or conditions in the adoption, our statute of adoption creates the legal relation of parent and child and gives to the adoptive parent and the adopted child all of the rights that pertain to that relation by virtue of the statute of descent." *In re Estate of Enyart,* 116 Neb. 450.

The first item for consideration is whether the rules, as announced with reference to the right of an adopted child to inherit, apply to one who was adopted prior to the present statute but whose adoption proceedings did not contain terms and conditions against inheriting from the adopting parent. We have already shown that there was nothing in the adoption proceedings here involved which provided that the children should have the right of inheritance, nor was there anything preventing the parties interested from supplementing the proceedings at a later date by granting the right of inheritance. The adopted children were given all other rights except the right of inheritance, but they were nevertheless adopted children.

As we have seen from what has been quoted from *In re Estate of Enyart, supra,* the right of inheritance is purely a creature of statute. The legislature may give and the legislature may take it away. It was in the power of the legislature in 1897 to say that the children who had been adopted under the prior act and by that adoption had been given equal rights with natural children should be deprived of the right to inherit, had the legislature been so minded. It did provide more liberally as to inheritance than had theretofore been the rule, because it provided that, unless there was a restriction in the adoption proceedings, the adopted child should inherit; whereas, under the prior law, it was provided that he should

not inherit unless it was expressly provided in the adoption proceedings.

In other jurisdictions the rule contended for by the appellees has been sustained. In *Dodin v. Dodin,* 44 N. Y. Supp. 800, the court held: "Laws 1887, c. 703, which amends Laws 1873, c. 830, so as to confer the right of inheritance on adopted children, applies to children theretofore adopted under the act of 1873." And said, in the body of the opinion: "There can be no question about the legislative power to capacitate an adopted child for inheritance in the future, although such capacity was not derived from the act of adoption." It approved a prior holding in the case that the operation of the act is prospective and not retrospective.

The supreme court of Vermont, in *In re Estate of Hagar,* 98 Vt. 235, held that the right to take property by a devise or descent is not a natural but a statutory right and therefore subject to legislative change at any time before the death of the owner of property; citing many cases.

In *Theobald v. Smith,* 103 App. Div. (N. Y.) 200, it was held that a child, adopted in 1886 under the act denying it the right of inheritance, acquired that right under the Laws of 1887. It held in that case, as was held in the *Dodin* case, that the effect and operation of the act of 1887 is prospective and not retrospective; that it simply adds adopted children to the list of those who shall be capable of inheriting, if at the time the descent is cast they are within that description.

In *Sorenson v. Rasmussen,* 114 Minn. 324, it was held that an amendment, giving to an adopted child the right to inherit, applies to all adopted children, whether adopted prior or subsequent to the passage of such statute; and held that the statute acts prospectively upon rights accruing through the death of adoptive parents after the passage of the law.

The appellant raises the objection to the application of the 1897 law that it is not an amendment of the prior

law but is an act complete in itself. It is true that it does not in terms state that it is an amendment and it is likewise true that the title of the act shows that it is an act to provide for the adoption of minor children and to repeal the specific act previously existing in relation thereto. But it was dealing at large, under the general subject of adoption, with the subsidiary subjects of adopted children, adoptive parents, and the rights of inheritance of each class from the other. All of these subjects inhered in the prior act. A perusal of the two acts in the light of legislative experience or observation, from neither of which are we compelled to divorce ourselves merely because we are judges, will convince the reader of two things: First, that the prior act was in practical effect amended by the present one; and, second, that the mechanics of the work was simplified by calling it an act to provide for adoption and to repeal, rather than an act to amend. The legislature took the simpler but the saner way, less likely to result in complications. They provided in the new law a standard for inheritance as they had provided one in the old. They were dealing with the rights of adopted children to inherit. They were considering a large class of persons whose social value to the state and to society merited that they should be considered tenderly and that none be forgotten. If the act is capable of the interpretation that they intended to grant the same right of inheritance to those adopted prior to 1897, as to those adopted thereafter, where the conditions were equal, we think we should adopt such a view. Looking beyond the form to the fact and through the shadow to the substance, the act of 1897 was in effect an amendment. Moreover, where there is a simultaneous repeal and reenactment of a portion of a former act, it is the prevailing view that the reenactment neutralizes the repeal and those provisions which are thus reenacted continue in force without interruption so that all rights and liabilities that have accrued thereunder are preserved and may be enforced. 25 R. C. L. p. 934, and cases cited. To this rule there is slight dis-

sent in the authorities. It is by virtue of this rule that the legislature by the act of 1897 recognized and continued in force the adoption of the appellees and in the same act exercised the legislative right, heretofore discussed, to grant to appellees the prospective right to inherit from Mrs. Grinnell their distributive shares of her intestate estate of which she might die seised. She and her husband adopted the children knowing, presumptively, that the laws of inheritance might be changed. She is presumed to have known since the passage of the act of 1897 that it had been changed so that the adopted children would inherit through her. Had she desired to avoid the effect of the law, she could have made a will carrying out her wishes instead of dying intestate. From the presumptions arising from the law as well as from internal evidence in the record as to her feeling toward appellees, we infer that she had no desire to interfere with the descent cast upon them by the law of 1897.

We are of the opinion that the act of 1897, providing for the adoption of minor children, of which section 1572, Comp. St. 1922, is a part, preserved the adoption of children theretofore adopted and gave the right to inherit from their adoptive parents to such adopted children as were not precluded from inheritance by the terms and conditions of the proceedings by which they were adopted.

The conclusion to which we have already arrived makes it unnecessary to discuss other questions covered by the briefs and arguments, in able and interesting fashion, by which appellees seek to maintain, and appellant to refute, that, irrespective of the act of 1897, the appellees were entitled to inherit from their adoptive mother.

We are of the opinion that the judgment of the district court was right and it is

AFFIRMED.