IN RE ESTATE OF WILLIAM KITTENBRINK, DECEASED. HUGH R. RALSTON, EXECUTOR OF THE ESTATE OF WILLIAM KITTENBRINK, AND HUGH R. RALSTON, AN INDIVIDUAL, APPELLANT, V. COUNTY OF DAWSON, NEBRASKA, ET AL., APPELLEES.

264 N. W. 2d 868

Filed April 19, 1978. No. 41457.

Cook, Lubberstedt & Kopf, for appellant.

Willard C. Weinhold, for appellee County of Dawson.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

BOSLAUGH, J.

William Kittenbrink died testate on September 23, 1974. The principal beneficiaries of his estate were the Methodist Church of Gothenburg, Nebraska; the Gothenburg Memorial Hospital; and Hugh R. Ralston, a nephew of his deceased wife.

The county court of Dawson County, Nebraska, found and determined that the value of the property which passed to Ralston from the decedent was $1,729,062.62 and that the total amount of inheritance tax due from Ralston was $308,591.27. From this order Ralston appealed to the District Court where the order was affirmed. Ralston has now appealed to this court.

Ralston contends that inheritance tax statutes which classify beneficiaries according to kinship are unconstitutional and that in any event he should be treated the same as a blood nephew of the testator even though there was no blood relationship between them.

At the time of the death of the testator, the inheritance tax statute, sections 77-2005 and 77-2006, R. R. S. 1943, provided as follows: "In the case of an uncle, aunt, niece, or nephew related to the deceased by blood or legal adoption, or other lineal descendant of the same, the rate of tax shall be six per cent of the clear market value of the property received by each person in excess of two thousand dollars and not exceeding sixty thousand dollars; and on all the excess over sixty thousand dollars, the rate of tax shall be nine per cent." § 77-2005, R. R. S. 1943. "In all other cases the rate of tax on the clear market value of the beneficial interests shall be as follows: (1) For any amount not exceeding five thousand dollars, six per cent; (2) on all the excess of beneficial interests over five thousand dollars and not exceeding ten thousand dollars, nine per cent; (3) on all the excess of beneficial interests over ten thousand dollars, and not exceeding twenty thousand dollars, twelve per cent; (4) on all the excess of beneficial interests over twenty thousand dollars and not exceeding fifty thousand dollars, fifteen per cent; and (5) on all the excess of beneficial interests over fifty thousand dollars, eighteen per cent; Provided, the rate of tax shall be applied to each in-

heritance only to the amount of the beneficial interest received in excess of five hundred dollars, and if the inheritance is five hundred dollars or less it shall not be subject to any tax." § 77-2006, R. R. S. 1943.

If the appellant were taxed as a nephew related to the deceased by blood, under section 77-2005, R. R. S. 1943, the inheritance tax due would be $153,695.64, approximately 50 percent of the amount due under section 77-2006, R. R. S. 1943.

In 1976 the Legislature amended the inheritance tax law, effective January 1, 1977, so that it now provides that "relatives of the decedent shall include relatives of a former spouse to whom the decedent was married at the time of the death of the former spouse." § 77-2005.01 (1), R. R. S. 1943. The effect of this amendment so far as a nephew is concerned is to eliminate the distinction between a nephew related by blood and a nephew by marriage.

The Chairman of the Judiciary Committee of the Legislature at the time the statute was amended testified at trial that a legislative study had disclosed "there was just no rational basis in fact for making a distinction as to matter of blood or non-blood relatives in this kind of situation. We could just find no reason whatsoever, no rationale, no reason was ever brought forth, and all that there was was a complaint about the fact there was a difference." The appellant in effect argues that this testimony was binding on the court and established that the classification which existed prior to 1976 did not rest upon real differences in situation and circumstances and was illegal and unconstitutional.

This testimony in regard to the legislative findings which led to the 1976 amendments to the inheritance tax law was an explanation by the witness as to why the statute was amended. To some extent it was in the nature of an opinion or judgment as distinguished from a conclusion of fact. Generally, such testimony is of limited use in statutory construction.

See, 2A Sutherland Statutory Construction (4th Ed.), § 48.16, p. 222; 82 C. J. S., Statutes, § 361, p. 792.

The question is not what the Legislature found in 1976 but what the Legislature could find at the time the distinction was made between nephews related to the deceased by blood or adoption and nephews by marriage. Essentially, this is a question of law.

The rule is well established that the Legislature has a broad discretion in making classifications for the purpose of excise taxes. In Anderson v. Tiemann, 182 Neb. 393, 155 N. W. 2d 322, we said: "The power of a state to make reasonable and natural classifications for purposes of taxation is clear and unquestioned. 'That a statute may discriminate in favor of a certain class does not render it arbitrary if the discrimination is founded upon a reasonable distinction, or difference in state policy. * * * Similarly, it has long been settled that a classification, though discriminatory, is not arbitrary nor violative of the Equal Protection Clause of the Fourteenth Amendment if any state of facts reasonably can be conceived that would sustain it.' Allied Stores of Ohio, Inc. v. Bowers, 358 U. S. 522, 79 S. Ct. 437, 3 L. Ed. 2d 480." See, also, 42 Am. Jur. 2d, Inheritance, Estate, and Gift Taxes, § 16, p. 233. In Todd v. County of Box Butte, 169 Neb. 311, 99 N. W. 2d 245, this court noted that the matter of exemptions in the inheritance tax law, to whom they apply and the amount thereof, is a legislative matter and not a judicial prerogative. In the Todd case a section applicable to the "husband of a daughter" was held not applicable to the husband of a deceased daughter.

It is generally held that an inheritance tax law may create a distinction in favor of kindred in the direct line as against collateral kindred or strangers in blood with respect to exemptions and the rate of taxation. See 42 Am. Jur. 2d, Inheritance, Estate, and Gift Taxes, § 19, p. 238. In First National Bank of Denver v. People, 183 Colo. 320, 516 P. 2d 639, a

classification as between a grandchild and a step-grandchild for the purposes of inheritance tax was upheld on the ground that the legislative scheme comported with the natural law of kinship. In Beals v. Commissioner of Corp. & Taxation (Mass.), 352 N. E. 2d 692, a classification as between adopted children and natural children of lineal descendants was held valid even though the distinction had been abolished in the probate law and prospectively in the inheritance tax law. In the Beals case the court said: "Although the Legislature has abolished such a distinction prospectively for tax purposes and even more generally for the purpose of construing wills and trust instruments (as we have assumed for the purposes of this case), there was no constitutional requirement that the distinction be eliminated in its entirety. The rational basis which sustained the earlier, general distinction may sustain, as well, the vestigial distinction in the inheritance tax law." See, also, In re Estate of Hagar, 98 Vt. 235, 126 A. 507.

The appellant cites and relies upon Williams v. State, 81 N. H. 341, 125 A. 661. In the Williams case the court recognized that similar legislation had been upheld in many other jurisdictions but felt the decision was controlled by a constitutional interpretation peculiar to New Hampshire.

The appellant's other contention is that the statute is ambiguous and the court should adopt a construction that would avoid unconstitutionality. We find no ambiguity in the language of section 77-2005, R. R. S. 1943, as it existed at the time of the death of the testator, and for the reasons stated above, the statute was not unconstitutional.

The judgment of the District Court is affirmed.

AFFIRMED.