# In re Joan W. Raymond Estate

[641 A.2d 1342]

No. 93-453

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed April 15, 1994

*Harvey B. Otterman, Jr.* of *Otterman and Allen, P.C.*, Barre, for Appellants.

*William B. Field* of *Valsangiacomo, Detora & McQuesten*, Barre, for Appellee.

**Dooley, J.** This appeal arises from a decision of the Randolph Probate Court awarding the entire estate of Joan W. Raymond, who died intestate, to her adopted half-brother Paul Dixon Raymond. Appellants James, John and William Wedgwood, cousins of the deceased, appealed that decision to the Orange Superior Court, which affirmed in favor of the appellee, Paul Raymond's guardian, and now appeal here. We affirm.

Joan Raymond was born in 1921 to Joseph Raymond and Helen Wedgwood Raymond. Joseph Raymond was previously married to Carrie Tewksbury Raymond. During that marriage, Joseph and Carrie adopted Carrie's sister Mary's son, Paul Dixon, on January 7, 1916.

The only issue in this case involves the inheritance rights of an adopted sibling. It is undisputed that if Paul Dixon Raymond

is to be treated as if he were a natural sibling of the deceased, he will inherit her entire estate. See 14 V.S.A. §§ 551(4), 552 (kindred of the half-blood shall inherit as kindred of the whole blood). On the other hand, if Paul Dixon Raymond does not stand as a sibling, the estate of the deceased will go to appellants as her next of kin. See 14 V.S.A. § 551(5).

At the time of Paul Dixon's adoption in 1916, adoptions were governed by P.S. §§ 3264–3271, made effective in 1906. Adoptee inheritance rights were specifically addressed in P.S. § 3270, which provided in relevant part:

> Upon the proper execution and filing of such an instrument [of adoption] the same rights, duties and obligations, and the same right of inheritance shall exist between the parties as though the person adopted had been the legitimate child of the person or persons making the adoption, except that the person adopted shall not be capable of taking property expressly limited to the heirs of the body or bodies of the parties making such adoption.

In 1945, the Legislature revised the laws of adoption, setting out the new laws in 15 V.S.A. §§ 431–454. See 1945, No. 41, §§ 1–23. Thus, at the time of Joan Raymond's death in 1991, adoptee inheritance rights were governed by 15 V.S.A. § 448, which provides in relevant part:

> Upon the issuance of a final adoption decree the same rights, duties and obligations, and the same right of inheritance shall exist between the parties as though the person adopted had been the legitimate child of the person or persons making the adoption, except that the person adopted shall not be capable of taking property expressly limited to the heirs of the body of the persons making such adoption. The same right of inheritance shall exist between the person adopted and his issue on the one hand and natural or adopted children of the person or persons making the adoption and their issue on the other hand as though the person adopted had been the legitimate child of the person or persons making the adoption.

For ease of reference, P.S. § 3270 will be referred to as the 1906 law, while 15 V.S.A. § 448 will be referred to as the 1945 law.

The sole issue before us reduces to a question of which of the two statutes is applicable to Paul Dixon Raymond's inheritance

rights—the 1906 law in effect at the time of his adoption or the 1945 law in effect at the time of Joan Raymond's death. If the former, appellants would prevail because the statute permits an adoptee to inherit from, but not through, the adopting parent(s). See *In re Walworth's Estate*, 85 Vt. 322, 333, 82 A. 7, 11 (1912) (construing 1906 law) ("[T]he words 'between the parties' are intended to limit such right of the person adopted to inherit from the person or persons making the adoption, and to this end they in effect negative any right to inherit through such person or persons by right of representation . . . ."). If the latter, appellee prevails because the 1945 law specifically allows for inheritance from siblings.

Appellants see this primarily as a statutory construction case. From the wording of the statute, they argue the Legislature's intent in enacting the 1945 law was not to affect existing inheritance rights of persons adopted before its effective date. Further, they claim an alternative reading would apply the 1945 statute retrospectively, and there is a strong presumption against retrospective operation. See *Curran v. Marcille*, 152 Vt. 247, 250, 565 A.2d 1362, 1364 (1989) ("statute affecting legally existing rights should not be construed to operate retrospectively" absent clear language to that effect). Although appellants' arguments draw some support from the statutory language, we reject them for three reasons.

First, our precedents, as well as those of the vast majority of states, are against appellants' position. The most important decision in Vermont, *In re Estate of Hagar*, 98 Vt. 235, 126 A. 507 (1924), concerned the right of the state to collect collateral inheritance and transfer taxes upon property devised by a decedent to her two adopted children. Although *Hagar* was a tax case, the Court was required to choose between the law in effect at the time of adoption and the law in effect at the time of the testator's death. To do so, it looked to the law that had developed in other states on the inheritance rights of adopted children. Quoting extensively from *Sorenson v. Rasmussen*, 131 N.W. 325 (Minn. 1911), and *Gilliam v. Guaranty Trust Co.*, 78 N.E. 697 (N.Y. 1906), the *Hagar* Court reasoned:

> The rule is well settled that since the right of one person to inherit the property of another vests at the death of the latter, the statute in force at that time rather than the one

in force at a prior or subsequent date governs the disposition of the estate. And by the same rule the right of adopted children in the estate of adoptive parents is determined.

*Hagar*, 98 Vt. at 241, 126 Vt. at 509 (citations omitted).

 We recognize that a great deal of time has passed since *Hagar*. A review of existing precedents, however, indicates that the vast majority of states that have considered this issue have ruled in accordance with *Hagar*. See, e.g., *McClure v. Noble*, 602 So. 2d 377, 378 (Ala. 1992) ("The inheritance rights of adopted persons are governed by the law of adoption and descent and distribution in force at the time of death of the person whose estate is involved."); *Brooks Bank & Trust Co. v. Rorabacher*, 171 A. 655, 656–67 (Conn. 1934) ("[T]he right of an adopted child or his heirs to inherit from an adoptive parent and, as well, from relatives of such parent is to be determined by the law in force at the time of the death of the person from whom inheritance is claimed."); *In re Williams*, 144 A.2d 116, 117 (Me. 1958) ("The law is settled in this state that the right to inherit property from or by an adopted person is determined by the law of descent in effect at the time of the death of the intestate."); *In re Estate of Adolphson*, 271 N.W.2d 511, 512 (Mich. 1978) ("Determinations of heirs are to be governed by statutes in effect at the time of death, and an adoption statute in effect at the time of death is controlling.") (citation omitted); *In re Cilley*, 163 A.2d 302, 305 (Pa. 1960) ("In determining the rights of inheritance of "chosen" or adopted children we are bound by the statutes of inheritance at the time the inheritance became effective . . . ."); see also Annotation, *What Law, In Point of Time, Governs as to Inheritance From or Through Adoptive Parent*, 18 A.L.R.2d 960, 962–66 (1951 & Supps. 1987 & 1993) (collecting and discussing cases from additional jurisdictions applying the statute in effect at date of death, including Colorado, District of Columbia, Florida, Idaho, Kentucky, Minnesota, Nebraska, New York, Ohio, and Virginia). In large part, decisions in accord with *Hagar* rely, as did this Court, on the fact that inheritance rights can be determined only upon the death of the testator or intestate and, therefore, should be governed by the inheritance law then in effect. See, e.g., *In re Estate of Carlson*, 457 N.W.2d 789, 791 (Minn. Ct. App. 1990)

("The right to inherit from an ancestor's estate accrues or vests at the time of that ancestor's death. Thus, no one has any rights to inherit until the death of the relative whose estate is at issue.") (citing *Sorenson*, 131 N.W. at 326); *McFadden v. McNorton*, 69 S.E.2d 445, 448 (Va. 1952) ("No one is heir of a living person. No vested right arises therefore until the death of the person from whom one seeks to take.").

■ Second, we can see no policy reasons for distinguishing between the inheritance rights of older adopted children and those of children adopted more recently. Application of the *Hagar* holding here is consistent with "the modern trend of placing adopted children upon the same footing as natural offspring." *In re Estate of Flowers*, 848 P.2d 1146, 1150–51 (Okla. 1993) (inheritance rights of adopted child not governed by law in effect at adoption, but rather by law in force at testator's death; therefore, Uniform Adoption Act, which abolished all differences between natural and adopted children, allows adopted daughter to qualify as pretermitted heir notwithstanding adoptive mother's previous termination of parental rights); see also *McFadden*, 69 S.E.2d at 450 (construing adoption and descent and distribution laws and concluding that "they emphasize the specific intention to put an adopted child on the same footing as the natural child"). The modern view of adoption should apply equally to children adopted at an earlier time and govern their current rights.

We also note that the courts that have rejected the *Hagar* rule rely on antiquated notions of the adoptive relationship as "a civil or contractual, an artificial, as contradistinguished from a natural status." *Weber v. Griffiths*, 159 S.W.2d 670, 674 (Mo. 1942); see also *Wilson v. Anderson*, 59 S.E.2d 836, 842 (N.C. 1950) ("'The right to inherit property created by adoption is an artificial one. The status established by adoption proceedings is a contractual status . . . .'") (quoting *Grimes v. Grimes*, 178 S.E. 573, 574 (1935)). Subsequent to the *Wilson* decision, the North Carolina Legislature amended its adoption and inheritance statute "and in each instance provided in substance that the adopted child should have the same right to inherit by, through, or from the adoptive parent as if he were the legitimate child of the adoptive parent." *Bennett v. Cain*, 103 S.E.2d 510, 512–13

(N.C. 1958). Perhaps to punctuate this intent, the Legislature also specifically provided that the amendments applied to adoptions that occurred before as well as after the effective date of the statutory amendment. See *id.* at 513.

Finally, we reject appellants' argument that the probate court's use of the 1945 adoption-inheritance law amounts to an impermissible retrospective application of that law. This argument was also rejected in *Hagar*, in which this Court observed: "Rights of inheritance in an estate do not accrue until the death of the owner intestate." *Hagar*, 98 Vt. at 241, 126 A. at 509 (quoting *Sorenson*, 131 N.W. at 326); see also *In re Williams*, 144 A.2d at 119 (inheritance rights do not vest until death of intestate). At the time of his adoption, Paul Raymond acquired no rights to inherit from Joan Raymond. Instead, Paul's rights to inherit from Joan Raymond vested upon her death in 1991. Therefore, applying the 1945 law to an inheritance vesting in 1991 is a permissible prospective application of that statute. See *In re Estate of Carlson*, 457 N.W.2d at 792 (given that inheritance rights do not vest until death of decedent, legislature may change inheritance laws without changing or affecting any existing rights).

In conclusion, we emphasize that we are prepared to modify rules of law that "lack[] justification in legal principles or reason." *Estate of Girard v. Laird*, 159 Vt. 508, 516, 621 A.2d 1265, 1270 (1993). Our reexamination of *Hagar*, however, shows that its reasoning is widely accepted in other jurisdictions, is fair to adoptees whenever they were adopted, and is in accord with the modern view of adoption. We decline to overrule *Hagar* and reaffirm its holding that the inheritance rights of adoptees are determined as of the date of death of the person from whom inheritance is to be derived.

*Affirmed.*