## Englund Estate

Before Klein, *Adm. J.*, Shoyer, Gutowicz, Bruno, Silverstein and Jamison, *JJ.*

*Charles Widger,* Assistant Attorney General, for exceptant.
*Paul Maloney,* of *Pepper, Hamilton & Scheetz,* contra.

JAMISON, *J.*, December 8, 1975—The Commonwealth of Pennsylvania has filed exceptions to the decision of Shoyer, J., invalidating section 2 of the Inheritance Tax Act of June 20, 1919, P. L. 521, as amended, 72 P.S. §2302, insofar as it classifies sons-in-law as collaterals, subject to a rate of tax higher than daughters-in-law, whom it classifies as lineals.

By the terms of his will, Axel H. Englund, who died June 29, 1953, gave the residue of his estate to his trustees to pay the income to his daughter, Helen E. Silliman, for life, with the power to appoint the income to her husband, Frank E. Silli-

man, III, by will. Subsequent life estates were also given to grandchildren, and the remainder to their appointees or descendants. Inheritance tax was assessed at the rate of two percent against the net estate without any apportionment between the life estates and the remainder. The Commonwealth, in October 1954, noted the contingent secondary life estate of testator's son-in-law and stamped the record, "In case the principal of this estate shall ultimately pass under the contingencies recited in the will at a rate of tax greater than 2%, the Commonwealth reserves the right to collect such additional tax as may be due."

Helen E. Silliman died July 4, 1972, leaving a will wherein she exercised the power of appointment in favor of her husband. On November 28, 1973, the trustees filed a supplemental inheritance tax return reporting the appointed life estate. The register of wills filed a supplemental life estate appraisement, revaluing the assets of the trust as of the date of death of Helen E. Silliman and computing the value of the life estate of her husband, Frank E. Silliman, III, at age 76, at $73,-413.86. Tax was assessed at the rate of 15 percent in the sum of $11,012.08, less credit of $1,468.28 for the two percent tax paid in accordance with the original appraisement, and less a credit of $2,936.55 for payment made on account on November 28, 1973.

Girard Trust Bank, co-trustee under the will of Axel H. Englund, filed a petition for citation, directed to the register of wills, to show cause why the supplemental inheritance tax appraisement assessing inheritance tax under the Inheritance Tax Act of 1919, classifying sons-in-law as collaterals, at the rate of 15 percent should not be strick-

en in toto, or, in the alternative, why the tax should not be recalculated at the rate of six percent, since sons-in-law are classified as lineals under the Inheritance and Estate Tax Act of 1961.

In his lucid and comprehensive opinion, dated May 15, 1975, Judge Shoyer decreed that the supplemental life estate appraisement is invalid and the tax therein assessed is improper, since the assessment of tax at a higher rate for a transfer to a son-in-law than for a transfer to a daugher-in-law violates the Equal Rights Amendment to the Pennsylvania Constitution, article I, sec. 28, adopted May 18, 1971.

Exceptions were filed by the Commonwealth, which contends that the gender-based classification of the Inheritance Tax Act of 1919, as amended, is reasonable because its purpose is to remedy the economic disadvantages of women in contemporary society and, therefore, violates neither the Pennsylvania Equal Rights Amendment nor the Equal Protection Clause of the Fourteenth Amendment.

The Commonwealth's argument is based on the theory advanced by Professor Philip B. Kurland[1] that equal rights should not be equated with women's rights. In his view, special legal protection and economic privileges extended to women should not now be withdrawn, since most women today are not equipped to succeed in a competitive society in which all differences in legal rights between men and women have been eradicated. "It can boast no label of equality now to treat the older generation as if they were their own children or

---

1. Kurland, The Equal Rights Amendment: Some Problems of Construction, 6 Harv. Civ. Rights - Civ. Lib. L. Rev. 343 (1971).

grandchildren." Professor Kurland proposes that Congress should clarify whether it is fostering a "unisex" approach or one that only bars invidious discrimination against women.

The foregoing approach, while not without merit, is not pertinent. We see no evidence of the principle of alleviating economic hardship to women in the taxing statute or in the judicial interpretation thereof. The preference of women over similarly situated men does not assist in undoing the inequalities in economic opportunity that women encounter: Frontiero v. Richardson, 411 U.S. 677, 93 S. Ct. 1764, 36 L. Ed. 2d 583 (1973); Moritz v. Commissioner, 469 F.2d 466 (10th Cir., 1972), cert. den., 412 U.S. 906 (1973). The question before us is not whether taxes for daughters-in-law, who enjoy a privileged status under the Act of 1919, supra, should be increased, but rather, whether discrimination against sons-in-law should be alleviated.

A review of various cases interpreting the taxing statutes belies the Commonwealth's argument that the preferential classification of women inures to their economic benefit. When presented with the opportunity to confer an advantage to women where different rates were applicable to husband and wife, our courts have chosen either to deprive the wife of a preference, or to grant favored status only to the husband. Thus, in Christman Estate, 75 D. & C. 92 (1950), where there was a transfer, in contemplation of death, of real estate to a daughter and a son-in-law as tenants by the entireties, the court, in construing the Act of June 20, 1919, P. L. 521, sec. 2, as amended, 72 P.S. §2302, held that the transfer to husband and wife by entireties should not be classified as a transfer

subject to tax at the two percent rate applicable to the daughter but, instead, must be included in the ten percent class applicable to the son-in-law. A similar, but somewhat anomalous, reluctance to confer any benefits on women is reflected in the decision in Zipperlein Estate, 367 Pa. 622, 80 A.2d 817 (1951). There, testatrix gave all of her estate to her step-son and his wife as tenants by the entireties. The court determined that "from a practical standpoint, the step-son and his wife must be regarded as each having a one-half interest." It then noted that while a step-son was a lineal heir, his wife was a collateral transferee (unlike the wife of a son, who was classified as a lineal), with the result that the step-son's share was taxed at the rate of two percent and his wife's share at ten percent. Mr. Justice Bell, dissenting, would have assessed the entire estate at ten percent. Neither the Commonwealth, in assessing at the higher rates, nor the courts in sustaining the Commonwealth's position, were solicitous of "economic privilege" for women.

The legislature, in 1961, eliminated the preference for daughters-in-law and also remedied the inequities reflected in Christman Estate and Zipperlein Estate. Both sons-in-law and daughters-in-law were classified as class A transferees, with an applicable tax rate of six percent. Transfers to, or for the use of, a husband and wife with right of survivorship were made wholly taxable at six percent where one of the transferees is a class A[2] (lineal) recipient and the other a class B recipient.

---

2. Inheritance and Estate Tax Act of June 15, 1961, P. L. 373, as amended, 72 P.S. §2485-403, 404 and 405, as amended by Act of December 29, 1967, P.L. 915 (No. 411), sec. 1.

Under the Act of 1961, supra, men and women are treated equally.[3]

The Commonwealth further urges that Federal sex discrimination cases interpreting the Equal Protection Clause of the Fourteenth Amendment are authoritative and controlling precedents to be used by the Pennsylvania courts in applying the Equal Rights Amendment.

Although guidelines for Pennsylvania courts may be found in the Federal decisions, it must be remembered that in the absence, and possibly in anticipation, of the passage of an Equal Rights Amendment to the Constitution of the United States, the Federal courts look to the Equal Protection Clause as the logical well-spring from which to afford equality of opportunity to women and to strike down statutes and practices which are discriminatory. The drafters of the Fourteenth Amendment did not have women in mind; the amendment was designed to promote racial equality. But, recognizing that our Constitution must be dynamic, the Supreme Court of the United States has interpreted the Fourteenth Amendment to prevent discrimination because of country of origin,[4] alienage,[5] illegitimacy,[6] and sex.[7]

3. The legislature may have foreseen the result reached by the Supreme Court in Weinberger v. Wiesenfeld, 420 U.S. 636, 95 S. Ct. 1225, 43 L. Ed. 2d 514 (1975), in which a provision in the Social Security Act which provided widows, but not widowers, with survivors benefits to care for minor children entitled to such benefits was overturned.

4. Oyama v. California, 332 U.S. 633, 644-46, 68 S. Ct. 269, 92 L. Ed. 249 (1948); Korematsu v. United States, 323 U.S. 214, 216, 65 S. Ct. 193, 89 L. Ed. 194 (1944); Hirabayashi v. United States, 320 U.S. 81, 100, 63 S. Ct. 1375, 87 L. Ed. 1774 (1943).

5. Graham v. Richardson, 403 U.S. 365, 372, 91 S. Ct. 1848, 29 L. Ed. 2d 534 (1971).

6. Jimenez v. Weinberger, 417 U.S. 628, 94 S. Ct. 2496,

Predictably, the adoption of a Federal equal rights amendment will stem the tide of litigation arising out of gender-based discrimination.[8] Courts, which cannot look to such an amendment, are rudderless in the volume and uncertainties of the case by case approach. See Vorchheimer v. School Dist. of Philadelphia, 400 F. Supp. 326 (E.D.Pa., August 7, 1975).[9]

Unlike the Federal courts, Pennsylvania courts do not lack a clear standard when confronted with a gender-based statute. Any taxation which draws a distinction as to rate of tax between men and women is ipso facto unconstitutional. The Equal Rights Amendment to the Constitution of the Commonwealth of Pennsylvania, Article I, sec. 28,

41 L. Ed. 2d 363 (1974); Tanner v. Weinberger, U.S.L.W. 2209, U.S.L.A. 6th Cir., October 31, 1975.

7. Reed v. Reed, 404 U.S. 71, 76, 92 S. Ct. 251, 30 L. Ed. 2d 225 (1971); Stanton v. Stanton, 421 U.S. 7, 95 S. Ct. 1373, 43 L. Ed. 2d 688 (1975).

8. A recent study revealed that there were some 800 Federal statutes containing gender-based classifications: Voter, Vol. XXV, Fall 1975, at page 7. The Pennsylvania Commission for Women has reviewed all existing State laws and has identified those that discriminate on the basis of sex. Work is now under way to amend or repeal those laws: Pennsylvania Commission for Women News, Oct.-Nov. 1975, at page 2.

9. The court found the school district's refusal to admit a female student to all-male Central High (a separate but equal school to Philadelphia High School for Girls) violative of her equal protection rights. Judge Newcomer exhaustively reviews the Supreme Court decisions on sex discrimination and examines the various, basically non-definitive, standards applied, e.g., "strict" or "permissive" or "rational relationship" to a "legitimate" or "compelling" State interest, differing at times, depending on whether the classification is viewed as beneficial or adverse to women. (The court declined to accept plaintiff's claim under the Pennsylvania Equal Rights Amendment, since standards governing the applicability of the ERA in the educational field have not been clearly established by the State courts.)

provides that "Equality of rights under the law shall not be denied or abridged in the Commonwealth of Pennsylvania because of the sex of the individual."[10]

Even were we to limit our consideration to the constitutionality of the instant preferential statute under the Equal Protection Clause, we find no present State interest or permissible actual legislative goal which is achieved in distinguishing between sons-in-law and daughters-in-law in assessing inheritance tax at different rates. The gender-based classification was established for a purpose unrelated to any biological difference between the sexes. The statute is archaic and singularly discriminatory in that it applies only to a limited group of sons-in-law who may happen to inherit from fathers-in-law or mothers-in-law who died prior to 1961.

Accordingly, we confirm the conclusion of Judge Shoyer that the Pennsylvania Equal Rights Amendment renders section 2 of the Inheritance Tax Act of 1919, P. L. 521, as amended, 72 P.S. §2302, unconstitutional insofar as it classifies sons-in-law as collaterals, while classifying daughters-in-law as lineals.

---

10. Thus, Kahn v. Shevin, 416 U.S. 351, 94 S. Ct. 1734, 40 L. Ed. 2d 189 (1974), sustaining a Florida statute which grants a $500 allowance to widows, but not to widowers, is inapposite. Cf. section 211 of The Fiduciaries Act of April 18, 1949, P. L. 512, as amended, 20 P.S. §320.211 which changed the "widows" exemption granted by section 12(a) of The Fiduciaries Act of June 7, 1917, P. L. 447, as amended, 20 PS §471, to a "spouse's" exemption. See also Conway v. Dana, 456 Pa. 536, 318 A.2d 324 (1974); Henderson v. Henderson, 458 Pa. 97, 327 A.2d 60 (1974).

Appellee, citing Moore Estate,[11] urges that the transfer should be taxed at six percent under the Inheritance and Estate Tax Act of 1961, supra, as amended.[12] That act, however, is, by its terms, prospective only: section 103 of the 1961 Act, supra, 72 P.S. §2485-103. It is well established that property passing by exercise of a power of appointment is taxed at the rate effective at the creation of the power (here, 1953), i.e., as part of the donor's estate, not at its exercise: Fry Estate, 41 D. & C. 2d 187, 192, 195, 17 Fiduc. Rep. 123, 129, 131-32 (Phila. O.C., 1966). Further, we agree with Judge Shoyer that Moore Estate is not controlling. In Moore, the donee of a general testamentary power of appointment created in 1954, who died in 1965, appointed the funds to charities. The court determined that no tax was payable because the "transfer" referred to the moment of exercise of the power of appointment, which occurred after the Act of May 28, 1956, P. L. 1757, as amended, 72 P.S. §2301.1, exempting from inheritance tax "the transfer of any property to charity." The decision in Moore may well have been dictated by the overriding legislative policy favoring tax exemption of charities.

It is noted that tax was paid on the entire net estate at the rate of two percent in 1954. There being no objection thereto by any party in interest, we make no comment as to the rate of tax applicable.

The exceptions of the Commonwealth of Pennsylvania to the decision of Shoyer, J., are herewith dismissed.

———

11. 445 Pa. 17, 283 A.2d 50 (1971); Fiduciary Review, November 1971, at page 1.

12. Brief for Appellee at pages 5-7.