**KUNKEL, ESTATE OF John C., Deceased, Kunkel, W. Minster, Wright, Hasbrouck S., Stark, Kenneth R., Jr., Executors, Appellees,**

v.

**UNITED STATES of America, Appellant.**

**No. 81–2900.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) June 24, 1982.

Decided Sept. 14, 1982.

Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Chief, Appellate Section, Carleton D. Powell, Michael J. Roach, Attys., Tax Div., Dept. of Justice, Washington, D.C., Carlon M. O'Malley, Jr., U.S. Atty. (of counsel), J. Andrew Smyser, Asst. U.S. Atty., Harrisburg, Pa., for appellant.

Thomas P. Glassmoyer, Ralph S. Snyder, Edward L. Baxter, Richard D. Birns, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., William D. Boswell (of counsel), Berman, Boswell, Snyder & Tintner, Harrisburg, Pa., for appellee.

Before GARTH and BECKER, Circuit Judges, and FULLAM,* District Judge.

## OPINION OF THE COURT

GARTH, Circuit Judge.

This action for a refund of federal estate taxes presents the question whether the equal protection clause is offended by a state inheritance tax statute that, as part of a more general scheme which taxes bequests to a decedent's close relatives at a lower rate than bequests to more distant relatives, imposes a higher tax rate on bequests to stepgrandchildren than it does on bequests to stepchildren, the children of

---

* Honorable John P. Fullam, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

one's adopted children, and spouses, among others. The district court held that the distinction was irrational and arbitrary, and so violated the equal protection clause. Unlike the district court, we conclude that the distinction in question is rationally related to a legitimate state purpose. Thus we will reverse the district court's judgment in favor of the taxpayer.[1]

## I.

John C. Kunkel died on July 27, 1970,[2] leaving a will which distributed his estate in three portions. First, one-half of the adjusted gross estate was to be used to establish a marital trust ("the trust fund") for the benefit of his surviving spouse, Katherine S. Kunkel. Mrs. Kunkel was to have the income from the trust fund for life, as well as two powers of appointment with respect to the corpus of the trust fund. Under the terms of the will, if Mrs. Kunkel failed to exercise those powers of appointment, the corpus of the trust fund would eventually pass on to her grandchildren—John Kunkel's stepgrandchildren.[3] Second, the will provided for a bequest of $35,000 for each of Kunkel's stepchildren (Mrs. Kunkel's children). Third, the will made a gift of the residue of the estate to the John Crain Kunkel Foundation, a charitable organization under section 501(c)(3) of the Internal Revenue Code of 1954 ("the Code"). In connection with this last bequest, the will specifically provided that all estate, inheritance, and other taxes to which the estate might be subject were to be paid out of the residuary estate. Thus,

any estate or inheritance taxes would reduce the amount of the charitable bequest while leaving the other bequests intact.

On October 29, 1981, Kunkel's estate ("the taxpayer") filed a federal estate tax return showing a gross estate of nearly $8,000,000 and a charitable deduction of slightly over $3,000,000. On a taxable estate of $686,742.71, the taxpayer calculated and paid a federal estate tax of $195,044.88. Subsequently, however, the Commissioner of Internal Revenue ("the Commissioner") determined a deficiency of $315,897.67. The taxpayer paid the deficiency but then filed a claim with the Commissioner for a refund of $118,084. It is this sum which is in dispute in the present case.

## A.

A full explanation of the nature of the present dispute between the taxpayer and the Commissioner—a dispute which, though turning on the constitutionality of a state inheritance tax statute, concerns federal tax liability—requires a brief description of the relevant state and federal inheritance and estate tax laws.

Section 2055(a)(2) of the Code provides that in calculating the federal estate tax, "the value of the taxable estate shall be determined by deducting from the value of the gross estate the amount of all bequests, legacies, devises, or transfers to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes...." It was under section

---

1. The taxpayer argues, however, that even if the challenged statute is upheld as constitutional, at least a partial refund is due because of an error in the calculation by the Internal Revenue Service. As the matter is properly for the district court to determine in the first instance, we will remand the case to the district court for such further proceedings as may be necessary.

2. The parties agree that the date set forth in the appendix at page 76, '1971', is an inadvertent typographical error.

3. More specifically, the will gave Mrs. Kunkel the power to appoint her estate as the beneficiary of the corpus of the trust fund. In addition, she could, "separately and without cou-

pling this appointment with the appointment to her estate ... appoint a sum or sums to a person or persons, individual or corporate, up to a total of One Hundred Fifty Thousand ($150,000) Dollars of and from" the trust fund. Appendix at 62.

If Mrs. Kunkel did not exercise her powers of appointment, the will basically provided that the trust fund would continue in existence after her death, with the stepchildren receiving the income from it for life. Then, on the death of the stepchildren, the corpus of the trust fund would be distributed in installments to their children (Kunkel's stepgrandchildren). *See* Appendix at 63–64.

2055(a)(2), then, that the taxpayer was qualified to take a charitable deduction for the gift to the Foundation. Section 2055(c), however, limits the amount of the charitable deduction that can be taken when—as in the present case—the will provides that all estate and inheritance taxes are to be payable out of the portion of the estate being given to the charitable organization:

> Death taxes payable out of bequests.—If the tax imposed by section 2001, or any estate, succession, legacy, or inheritance taxes, are, either by the terms of the will, by the law of the jurisdiction under which the estate is administered, or by the law of the jurisdiction imposing the particular tax, payable in whole or in part out of the bequest, legacies, or devises otherwise deductible under this section, then the amount deductible under this section shall be the amount of such bequests, legacies, or devises reduced by the amount of such taxes.

In the circumstances of the present case, the taxpayer was allowed under section 2055 to take a charitable deduction equal to the residue of the estate after the bequests to the trust fund and to Kunkel's stepchildren were made, less the amount of estate and other taxes determined to be due. Thus, the exact amount of the bequest to the Foundation—and so the amount of the charitable deduction allowed under section 2055—would depend on precisely how much the federal and state taxes turned out to be.

### B.

With respect to the state tax liability, the Pennsylvania Inheritance and Estate Tax Act of 1961 ("the Pennsylvania inheritance tax"), 72 Pa. Stat. Ann. §§ 2485–102 to –1201, imposes a tax of six percent on bequests to "Class A" beneficiaries, and fifteen percent on bequests to "Class B" beneficiaries. *See id.* §§ 2485–403, –404. "Class B" beneficiaries are all those not included in "Class A"; "Class A" beneficiaries include the grandparents, parents, spouse and lineal descendants, among others. *Id.* In turn, the term "lineal descendants" is defined to include

all children of the natural parents and their descendants, adopted descendants and their descendants, *stepchildren,* and children and their descendants of the natural parent who are adopted by his spouse. *It does not include descendants of stepchildren* or adopted children and their descendants in the natural family, except as above set forth.

*Id.* § 2485–102(13) (emphasis supplied). Finally, the tax imposed by the Pennsylvania inheritance tax statute is generally assessed at the time that the interest bequeathed by the will passes into the hands of the ultimate beneficiary, although the executor may elect to prepay the tax.

### C.

In calculating the amount of Pennsylvania inheritance taxes due, the taxpayer assumed that the bequest establishing the trust fund would be taxed at the six percent rate applicable to gifts to "Class A" beneficiaries. The taxpayer then subtracted this amount from the value of the residue of the estate in computing the size of the charitable deduction under section 2055. The Commissioner, in determining the deficiency, contended that the taxpayer had underestimated the Pennsylvania inheritance tax liability by assuming that the six percent rate applied. As previously noted, if Mrs. Kunkel died without having exercised her powers of appointment, the corpus of the trust fund would, under the terms of the will, eventually be distributed to Mr. Kunkel's stepgrandchildren. As stepgrandchildren are "Class B" beneficiaries, Pennsylvania would at that time assess an additional nine percent tax on the bequest establishing the trust fund, in order to bring the tax rate up to the fifteen percent level assessed on gifts to "Class B" beneficiaries. In that event, the taxpayer would turn out to have underestimated the state inheritance tax ultimately due; consequently, the taxpayer would have overstated the size of the charitable deduction allowable under section 2055. Taking the fifteen percent rate as the applicable one, the Commissioner determined the size of the charitable

deduction to be $2,106,520.62, rather than the $3,230,133.12 that the taxpayer had claimed. And that overstatement of the charitable deduction had caused the federal estate tax to be underpaid by $118,084.

In support of his position, the Commissioner relied on 26 C.F.R. § 20.2055–2(b)(1), which provides in part:

If, as of the date of a decedent's death, a transfer for charitable purposes is dependent upon the performance of some act or the happening of a precedent event in order that it might become effective, no deduction is allowable unless the possibility that the charitable transfer will not become effective is so remote as to be negligible. If an estate or interest has passed to, or is vested in, charity at the time of a decedent's death and the estate or interest would be defeated by the subsequent performance of some act or the happening of some event, the possibility of occurrence of which appeared at the time of the decedent's death to be so remote as to be negligible, the deduction is allowable.

The possibility that Mrs. Kunkel would die without having exercised her powers of appointment, the Commissioner asserted, was not "so remote as to be negligible." Thus, there was a nonnegligible possibility that the trust fund would pass to the stepgrandchildren, triggering the imposition of an additional nine percent state inheritance tax. As that nine percent differential would be paid out of the residuary portion of the estate from which the bequest to the Foundation was made, there was a nonnegligible possibility that the charitable bequest "would be defeated [to the extent of the additional inheritance tax] by ... the happening of some event" within the meaning of the regulation. Under the terms of the regulation, therefore, the Commissioner decided that the taxpayer should have assumed that the fifteen percent tax rate would apply, and that the taxpayer thereby should have claimed the smaller charitable

deduction than the higher state inheritance tax rate would imply.

### D.

On December 28, 1978, having failed to obtain a refund from the Commissioner, the taxpayer[4] sued in federal district court for a refund. On May 30, 1980, both parties moved for summary judgment. The taxpayer argued, among other things, that on the facts of this case the possibility that Mrs. Kunkel would fail to exercise her powers of appointment was so remote as to be negligible. The taxpayer further argued that imposition of the higher rate of taxation would violate the equal protection clause. Noting that under Pennsylvania law, not only a bequest to a surviving spouse, but even a bequest to a stepchild, was taxed at the lower "Class A" rate, the taxpayer contended that to tax the bequest at the higher "Class B" rate simply because it went to the decedent's step*grand*children would be utterly irrational. Because the classification violates the equal protection clause, the extra nine percent differential between "Class A" and "Class B" gifts could never be collected, even if the corpus of the trust did pass to the decedent's step-grandchildren. As a result, the taxpayer concluded, the amount of the Pennsylvania inheritance tax due was not underestimated, and the charitable deduction taken on the federal estate tax return was not overstated.

### E.

In an opinion of July 23, 1981, the district court rejected the taxpayer's first argument, holding that "this court cannot characterize the possibility of Mrs. Kunkel choosing not to exercise the power of appointment as 'so remote as to be negligible.' " *Estate of Kunkel v. United States,* 518 F.Supp. 690, 692 (M.D. Pa. 1981). The district court, however, accepted the second argument and held the Pennsylvania inheritance tax unconstitutional insofar as it dis-

---

4. The plaintiffs—the estate of John C. Kunkel and its executors—will be referred to in this opinion as "the taxpayer."

tinguished between stepchildren and step-grandchildren:

Plaintiffs succinctly summarize their position as follows:

It is impossible to conceive of a rational basis for a distinction between adopted grandchildren and step-grandchildren whereby the latter should be disadvantaged. Had stepchildren and step-grandchildren been disadvantaged as against adopted children and grandchildren, one might say that the policy advanced by the statute was the encouragement of adoption and thus the stability of families. However, such a policy would not be advanced by a statute which distinguishes, as this one does, between stepchildren and step-grandchildren....

Defendant has proffered no legitimate state interest to be served by this section of the statute, nor has it established that a rational relationship exists between the statute and a legitimate state interest. The court views the statute in question as an attempt to create additional tax revenues in an arbitrary and capricious manner and finds neither a rational relationship nor a legitimate state interest being served. As such, the statute is unconstitutional on its face. Accordingly, the court will grant plaintiffs' motion for summary judgment.

*Id.* at 693–94.

Noting that "[p]laintiffs claim the amount due them, if they are successful, is $118,084," *id.* at 692 n.1, and that the Commissioner had neither admitted nor denied that that particular sum was the correct amount due the taxpayer, the district court "grant[ed] 20 days to show cause why the court should not enter judgment in favor of plaintiff in the amount of $118,084. Failure to respond within the given time will result in the court entering judgment in that amount." *Id.* at 694. On August 14, 1981, the Commissioner conceded that, if any refund was due, the proper amount was $118,084, and the district court therefore entered judgment in favor of the plaintiff that same day. On October 9, 1981, the Commissioner filed a timely notice of appeal.

## II.

■ On appeal, the Commissioner presents two arguments. First, the district court's decision should be reversed on the ground that in the circumstances presented by this case, resolution of the constitutional question was unnecessary.[5] Second, if the merits of the taxpayer's constitutional claim are to be reached, the district court's holding that Pennsylvania's inheritance tax scheme violates the equal protection clause is unsupportable. We consider each argument in turn.

## A.

■ As we noted in *Estate of Brooks v. Commissioner,* 250 F.2d 937, 939 (3d Cir. 1958), when a taxpayer seeks to take a charitable deduction on the federal estate tax return, and there is a possibility that some of the money for which the deduction is claimed may be taken back from the charity at a future point and used for non-charitable purposes (such as the payment of additional state inheritance taxes), it is up to the taxpayer to establish that that possibility is so remote as to be negligible. *See generally Connecticut Bank and Trust Co. v. United States,* 439 F.2d 931, 934–36 (2d Cir. 1971). In the present case, the Commissioner argues that for the reasons outlined below, even a federal court holding that the Pennsylvania inheritance tax violates the equal protection clause could not

---

5. The taxpayer asserts that the Commissioner did not present this argument before the district court and so is precluded from making it now. We agree with the Commissioner, however, that the "abstention" argument raises a purely legal question; that the taxpayer has shown no prejudice by the Commissioner's failure to raise the issue below; and that in light of the strong principle that courts should make every effort to avoid constitutional determinations, this court is presented with one of those "exceptional circumstances," *see Altman v. Altman,* 653 F.2d 755, 758 (3d Cir. 1981), in which the usual rule precluding the raising of issue for the first time on appeal should be relaxed.

render negligible the possibility that the additional nine percent tax liability would in fact be collected should the trust fund ever pass to the decedent's stepgrandchildren. Thus, even if this court were to affirm the district court's constitutional holding on the merits, the Commissioner argues, we would be obliged to conclude that section 2055(c) nevertheless required that the taxpayer take the smaller charitable deduction that results from applying the higher "Class B" rate of fifteen percent. As the constitutional holding would thus have no practical impact on the outcome of the case—the taxpayer would not be entitled to a refund whether or not this court affirmed the district court's holding that the Pennsylvania inheritance tax violates the equal protection clause—this court should refrain from reaching the constitutional question in the first place.

The Commissioner's assertion that the district court's resolution of the taxpayer's constitutional claim was superfluous starts from the premise that the Commonwealth of Pennsylvania is not bound by the decision in this case, because it was not a party to the litigation. Consequently, if the trust fund does eventually pass to the decedent's stepgrandchildren, Pennsylvania will seek to collect the additional nine percent tax due under the state inheritance tax statute. If the taxpayer resists payment of the additional tax, and the matter ends up in the Pennsylvania courts, those courts would not be bound by the district court's ruling that the state inheritance tax statute is unconstitutional. Thus, the Pennsylvania courts might uphold the statute as constitutional, and the additional nine percent would, in the end, be collected. In those circumstances, not only would a district court's ruling on a constitutional question turn out to be

without any practical effect, but also it would allow the taxpayer to take a charitable deduction for an amount equal to the additional nine percent even though "there is still a significant chance that the additional taxes 'would waste a part . . . of the charitable interest.'" Appellant's Brief at 18 (quoting *Henslee v. Union Planters Bank,* 335 U.S. 595, 599, 69 S.Ct. 290, 292, 93 L.Ed. 259 (1949)). Such a result would be contrary to the purpose of section 2055(c), which is to ensure that charitable deductions are taken only for sums of money which are certain, or nearly so, to benefit the charity.

The taxpayer replies that the Commonwealth *is* bound by the district court's decision, because pursuant to 28 U.S.C. § 2403(b),[6] the district court notified the Commonwealth that the constitutionality of its inheritance tax statute was being challenged, and the Commonwealth did not intervene. Even if the Commonwealth is not bound by its failure to intervene, the taxpayer continues, the Commissioner's argument should be rejected. It would be unjust to force the taxpayer to pay a higher federal estate tax now simply because "there would remain a non-negligible possibility that a Pennsylvania court might *wrongly* conclude, at some point in the future, that the [Pennsylvania inheritance tax] statute is constitutional." Appellees' Brief at 13 (emphasis in original).

We are not persuaded by the Commissioner's argument. Assuming without deciding that the Commonwealth could not be bound by the district court's decision, the Commissioner's position amounts to an assertion that it would never be proper in a section 2055 case to rule on the constitutionality of a state tax statute. In our view,

---

**6.** 28 U.S.C. § 2403(b) provides:

In any action, suit, or proceeding in a court of the United States to which a State or any agency, officer, or employee thereof is not a party, wherein the constitutionality of any statute of that State affecting the public interest is drawn in question, the court shall certify such fact to the attorney general of the State, and shall permit the State to intervene for presentation of evidence, if evidence

is otherwise admissible in the case, and for argument on the question of constitutionality. The State shall, subject to the applicable provisions of law, have all the rights of a party and be subject to all liabilities of a party as to court costs to the extent necessary for a proper presentation of the facts and law relating to the question of constitutionality.

however, it would be questionable at best to refrain from passing on a contention that a state tax statute is unconstitutional when— as here—the dispute over the taxpayer's *federal* tax liability turns on that very contention. Where the taxpayer seeks a refund, the federal courts provide the only forum in which the taxpayer may present that claim; certainly the taxpayer cannot go to the state courts to seek a refund of federal taxes from the Commissioner.[7] Thus we turn to the merits of the taxpayer's argument that the Pennsylvania inheritance tax violates the equal protection clause.

### B.

■■ The statutory classifications under attack here are not based on race, sex, illegitimacy, or other similar factors, nor do they impinge on a fundamental right. Consequently, in order to sustain a challenge to the classifications made by the Pennsylvania inheritance tax statute, the taxpayer has the burden of demonstrating that those classifications are not rationally related to any legitimate state purpose. *See generally Hopkins v. Kelsey-Hayes, Inc.,* 628 F.2d 801, 808–11 (3d Cir. 1980), *vacated and remanded on other grounds sub nom. G.D. Searle & Co. v. Cohn,* 455 U.S. 404, 102 S.Ct. 1137, 71 L.Ed.2d 250 (1982); *Eatough v. Albano,* 673 F.2d 671, 675–76 (3d Cir.), *cert. denied,* —— U.S. ——, 102 S.Ct. 2931, 73 L.Ed.2d 1331 (1982). In our view, that burden has not been met in the present case, and the district court's holding that the statute is unconstitutional was in error.

The district court characterized the differential tax rates for bequests to "Class A"

and "Class B" beneficiaries as an arbitrary "attempt to create additional tax revenues" by taxing the latter at a higher rate. The purpose of the statute, however, could just as easily be characterized as the promotion of close family relationships: bequests to close relatives are encouraged by taxing those bequests at a lower rate than are bequests to more distant relatives and non-relatives. Having made this observation, the inquiry into the validity of the challenged classifications is at an end; a legitimate purpose has been identified, and a rational relationship between that purpose and the means chosen to foster it has been established. *See, e.g., Vance v. Bradley,* 440 U.S. 93, 97, 99 S.Ct. 939, 942, 59 L.Ed.2d 171 (1979). It is not for the courts to conduct a more exacting inquiry into the "true" purpose of the statute, or to ask whether some alternative means would have been more closely tailored to achievement of the end sought.

The taxpayer asserts, however, that even under this extremely deferential standard, the statute must be held unconstitutional. While apparently conceding that the promotion of close family relationships is a legitimate aim, the taxpayer asserts that the statute cannot, on any possible rational basis, be considered to advance that aim. If "close relatives" are deemed to be those related by blood to the decedent, then it makes no sense to distinguish between step-children ("Class A" beneficiaries) and step-grandchildren ("Class B" beneficiaries). On the other hand, if "close relatives" are those who have close family ties to the decedent, apart from blood relationship, then it is illogical to distinguish between the children of the decedent's adopted children ("adopt-

---

7. The Commissioner asserts that the statutory policy underlying the Tax Injunction Act, 28 U.S.C. § 1341 ("The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."); *see generally California v. Grace Brethren Church,* —— U.S. ——, 102 S.Ct. 2498, 73 L.Ed.2d 93 (1982), argues in favor of refusing to reach the constitutional issue in this case. We disagree. At this point, Pennsylvania has made no effort to collect any inheritance tax in addition to the six

percent "Class A" tax which the taxpayer has already paid; whether the taxpayer could bring an action in the Pennsylvania courts to enjoin the possible collection of the additional nine percent in the future is at best uncertain. Even if such an action could be brought in state court, however, the taxpayer would not, as we note in text above, have a "plain, speedy and efficient remedy" in the *state* courts for the Commissioner's allegedly wrongful determination of a deficiency in the taxpayer's *federal* estate taxes.

ed grandchildren," who are "Class A" beneficiaries) and the decedent's stepgrandchildren ("Class B" beneficiaries). Under Pennsylvania law, the taxpayer argues, a stepchild generally cannot be adopted unless the natural parent is dead; thus the decedent might have been as close to his stepchild as he would be to an adopted child, and yet find that, for a reason entirely beyond his control, bequests to his stepgrandchildren are taxed at a higher rate than bequests to his adopted grandchildren. *See* Appellees' Brief at 16–17.

■■ The fatal difficulty in the taxpayer's argument, however, is that the equal protection clause does not require that a state, in deciding which bequests to tax at a lower rate, consider only one factor to the exclusion of others. Rather, it is for the legislature, and not the courts, to decide how much weight, if any, to place on factors such as blood relationship and family ties in determining which relatives should be included in "Class A" and which in "Class B." The exact point at which the lines are drawn inevitably will have a degree of arbitrariness; yet as one court has noted, "[l]egislative line drawing ... may produce different tax consequences in nearly identical situations, but such lines must be drawn to make a tax system workable and alterable." *Beals v. Commissioner of Corporations and Taxation,* 370 Mass. 781, 352 N.E.2d 692, 695 (1976). That unfortunate, but inevitable degree of arbitrariness, cannot provide a basis for invalidating a statutory classification under the equal protection clause. *See Vance v. Bradley,* 440

U.S. at 108, 99 S.Ct. at 948 ("[e]ven if the classification ... is to some extent both underinclusive and overinclusive, and hence the line drawn by the [legislature] is imperfect, it is nevertheless the rule that in a case like this 'perfection is by no means required' ").

■ In so holding, we of course pass no judgment on the admittedly rather obscure wisdom of distinguishing bequests to stepgrandchildren from bequests to adopted grandchildren. Our holding instead is based on the fact that if imperfection were grounds for striking down a statute as violative of the equal protection clause, no statute could survive even minimal scrutiny. Thus, as several state courts have recognized when confronted with similar claims that inheritance tax classifications violate the equal protection clause, the legislature must be accorded considerable discretion in the drawing of lines and the establishment of statutory classifications. *See In re Estate of Kittenbrink,* 200 Neb. 678, 264 N.W.2d 868 (1978) (upholding inheritance tax distinction between nephew related to decedent by blood and nephew not related to decedent by blood); *Beals, supra* (upholding distinction between adopted children of lineal decedents and natural children of lineal decedents); *First National Bank of Denver v. People,* 183 Colo. 320, 516 P.2d 639 (1973) (en banc) (upholding distinction between grandchildren and stepgrandchildren).[8]

Thus, we hold that the Pennsylvania inheritance tax statute, as applied to the facts

---

8. The taxpayer attempts to distinguish *Kittenbrink* and *Beals* by arguing that those two cases stand merely for the proposition that inheritance classifications based on blood relationship are not irrational, and that the distinctions in the present case are not based on blood relationship. We cannot agree with this reading of those two cases, however, in light of the broad language that both opinions use to describe the legislature's power to decide precisely where to draw the lines between different classes of relatives. *See, e.g., Beals,* 352 N.E.2d at 695 ("Classifications drawn by the Legislature in allocating the tax burden are accorded considerable deference and will be held to satisfy the requirements of equal pro-

tection if 'supported on any conceivable basis.' ").

The taxpayer also cites *Englund Estate,* 74 Pa. D. & C. 2d 230 (Phil. D.C. 1975) (inheritance tax distinction between son-in-law and daughter-in-law violates equal protection), and an Opinion of the Attorney General of Pennsylvania, No. 13 (June 30, 1978) (inheritance tax distinction between illegitimate children of decedent mother and illegitimate children of decedent father violates equal protection). Classifications based on race, sex, or illegitimacy, however, trigger a significantly higher degree of judicial scrutiny than is appropriate in the present case. *Cf. Eatough v. Albano,* 673 F.2d at 676 n.4.

of the present case, does not violate the equal protection clause.

### III.

The taxpayer raises one other issue concerning its claim for a refund. As noted earlier, *see* note 3 *supra,* the decedent's will gave an interest in the trust fund not only to Mrs. Kunkel, but also to the stepchildren and stepgrandchildren. Speaking generally, Mrs. Kunkel in effect was given a "life interest" in the trust fund (that is, the right to the trust income for life); the stepchildren were given a "contingent life interest" in the trust fund (that is, the right to the trust income during their lives, contingent upon Mrs. Kunkel's dying without having exercised her powers of appointment); and the stepgrandchildren were given a "contingent remainder interest" (that is, the right to the corpus of the trust fund, contingent also upon Mrs. Kunkel's dying without having exercised her powers of appointment).

Before this court, the taxpayer argues that the Commissioner erroneously failed to take account of the fact that the value of the "contingent life interest" the stepchildren received would be taxed at the rate of six percent, not fifteen percent:

> [t]he Commissioner assessed additional Federal estate tax based upon the entire remainder of the marital Trust becoming subject to Pennsylvania inheritance tax at 15 percent. However, Decedent's stepchildren, under Pennsylvania law, are Class A Beneficiaries and the interest passing to them will be taxed at the six percent rate. Thus, even if the statute were constitutionally valid, only the value of the interest passing to the issue of Decedent's stepchildren would be taxed at the rate of 15 percent.

Appellees' Brief at 23–24. Characterizing this contention as an attack "on the actuarial computation upon which the adjustment to the estate's tax liability was made," Re-

ply Brief at 5, the Commissioner replies that that computation is not in the record, and that the taxpayer never raised the issue before the district court. Thus, the Commissioner concludes, it would be inappropriate for this court to pass on the merits of the taxpayer's claim, and the taxpayer is not entitled to a remand to the district court for determination of this claim.

■ We believe that resolution of the taxpayer's claim for at least a partial refund is properly a matter for the district court in the first instance. Certainly, we are in no position to make the findings of fact necessary to resolve this issue; the only serious question is whether the taxpayer's failure to raise the issue before the district court should preclude a remand. Under the particular circumstances of this case, we think it should not. Even had the taxpayer raised the issue of the accuracy of the Commissioner's calculations before the district court, it is highly unlikely that the district court would have passed upon it. Having held that the taxpayer was entitled to a full refund because the Pennsylvania inheritance tax statute violated the equal protection clause, there would have been no reason for the district court to engage in speculation about how much of a partial refund the taxpayer would be due if the statute were constitutional. Even if the issue had been raised before the district court, then, the need for the remand would be just as strong as it is in the present case.[9] In that respect, we are faced with a significantly different situation from that presented in the cases on which the Commissioner relies for his assertion that absent extraordinary circumstances, appeals courts will not direct a remand in order "to permit a litigant to repair the gaps in its original trial strategy." Reply Brief at 7. In *Caisson Corp. v. Ingersoll-Rand Co.,* 622 F.2d 672, 679–81 (3d Cir. 1980), for example, this court expressed concern over the potential for inefficiency and unfairness to the pre-

---

9. We note that the taxpayer characterizes its contention regarding the Commissioner's computational and actuarial assumptions as an alternative basis for affirming the district court's judgment. As the taxpayer is not arguing that acceptance of its claim that the Commission-

er's calculations were incorrect would entitle it to a refund of the full $118,084 that the district court awarded the taxpayer, however, the taxpayer's argument is properly understood as a request for a remand and not as a basis for an affirmance.

vailing party that would result if a district court's evidentiary rulings could be reversed on the basis of arguments presented for the first time on appeal. Had the district court been presented with the alternative argument, the *Caisson* court noted, it might have ruled differently than it did and so obviated any claim of error. In the present case, on the other hand, given that the district court ruled the statute unconstitutional, we fail to see what difference it would have made had the taxpayer presented its contention that it was due a partial refund if the statute were upheld.[10] Thus, we believe that a remand is appropriate to allow the district court to pass on the taxpayer's claim for a partial refund based on the contention that the Commissioner committed computational or other such errors in determining the taxpayer's estate tax deficiency.[11]

## IV.

Accordingly, we will reverse the district court's holding that the Pennsylvania inheritance tax statute violates the equal protection clause, and remand the case for such further proceedings as the district court deems appropriate in light of this opinion.

BECKER, Circuit Judge, concurring in the result.

I agree that the judgment of the district court should be set aside and that this case should be remanded for consideration of the taxpayer's claim for a partial refund. I am in fundamental disagreement, however, with the route that Judge Garth takes to arrive at this result. I believe that the district court erred in reaching the taxpayer's claim that the Pennsylvania Inheritance and Estate Tax Act §§ 403, 404, Pa. Stat. Ann. tit. 72, §§ 2485–403, –404 (Purdon 1964 & Supp. 1982–83), violates the Equal Protection Clause.[1] Judge Garth compounds this error by reversing on the merits. If the district court's judgment on this claim does not bind the State, as I think it does not, then it is advisory, because it cannot affect the taxpayer's federal estate tax liability under I.R.C. § 2055, Treas. Reg. § 20.2055–2 and *Estate of Brooks v. Commissioner*, 250 F.2d 937 (3d Cir. 1958). If I am wrong, and the State is bound, then the Tax Injunction Act, 28 U.S.C. § 1341 (1976), deprived the district court of jurisdiction. I address each of these points in turn.[2]

## I.

Judge Garth assumes without deciding that the district court's judgment cannot affect the State. It proceeds nonetheless to reach the merits because "it would be questionable at best to refrain from passing on a

**10.** Of course, had the district court held the statute constitutional and granted judgment in favor of the Commissioner, the concerns underlying *Caisson* might very well have come into play.

**11.** We of course express no view as to the merits of the taxpayer's claim.

**1.** Judge Fullam represents that he is not deciding the constitutionality of the Pennsylvania Inheritance and Estate Tax Act §§ 403, 404, Pa. Stat. Ann. tit. 72, §§ 2485–403, –404 (Purdon 1964 & Supp. 1982–83), but only "making the kind of prediction required for determining the correct federal estate tax" and, en route to his "predictive assessment," "expressing the view that a constitutional challenge to a state inheritance tax statute would be unlikely to succeed." He has therefore not joined in Judge Garth's opinion. While I commend Judge Fullam's efforts to bridge the gap between Judge Garth's views and mine, I perceive that he, like Judge Garth, has decided the constitutional

question. Accordingly, while my comments herein, for the sake of convenience, are directed to Judge Garth's opinion they apply for the most part to Judge Fullam's opinion as well.

**2.** As Judge Garth notes, at 414 n. 5, the taxpayer contends that the Commissioner cannot attack for the first time on appeal the district court's decision to hear the taxpayer's constitutional challenge. Judge Garth believes that "exceptional circumstances," *Altman v. Altman*, 653 F.2d 755, 758 (3d Cir. 1981), including the importance of avoiding unnecessary constitutional rulings, justify relaxation in this case of the rule that new issues cannot be raised on appeal. While I do not disagree, I think that we need not decide whether the *Altman* test is satisfied. The Commissioner attacks the subject matter jurisdiction of the district court, and questions of subject matter jurisdiction can, of course, be raised at any time.

contention that a state tax statute is unconstitutional when—as here—the dispute over the taxpayer's *federal* tax liability turns on that very contention." At 415. We should not assume, but rather should decide, whether the district court's judgment is binding, because, in fact, the taxpayer's federal estate tax liability turns on the constitutionality of the state statute *only* if the State is bound.

Section 2055 permits the taxpayer to reduce the value of its federal taxable estate by "the amount of all bequests, legacies, devises, or transfers . . . to or for the use of any corporation organized and operated exclusively for . . . charitable . . . purposes." I.R.C. § 2055(a)(2). This deduction may not be taken for the amount of state death and estate taxes that are payable out of such charitable bequests. *Id.* at § 2055(c). The purpose of subsection (c) is to ensure that the taxpayer deducts only those sums that are certain to be dedicated to charitable uses. Accordingly, the regulation implementing section 2055 provides:

> If an estate or interest has passed to, or is vested in, charity at the time of a decedent's death and the estate or interest would be defeated by the subsequent performance of some act or the happening of some event, the possibility of occurrence of which appeared at the time of the decedent's death to be so remote as to be negligible, the deduction is allowable.

Treas. Reg. § 20.2055–2(b)(1).

In *Estate of Brooks, supra,* we considered the relationship of section 2055 to the provision of the Pennsylvania inheritance tax act that taxes testamentary transfers at the time they come into possession. We held that the amount of the federal charitable deduction was properly diminished by the estate's contingent liability for state taxes when the widow's failure to exercise her power of appointment over a marital trust would make additional taxes due. Writing for the court, Judge Goodrich identified the critical question as whether "the funds may not end up being applied to a use of the type Congress has singled out for . . . favorable treatment," (i.e., the charitable use.) 250 F.2d at 939.

*Estate of Brooks,* in my view, controls the case before us. The district court held that the possibility that additional state inheritance taxes would become due from John Crain Kunkel's estate after his widow's death was not "so remote as to be negligible." I agree with Judge Garth that this conclusion is sound. *Estate of Brooks,* then, is distinguishable only if the district court's adjudication of the constitutional question ended the possibility that "the funds may not end up being applied" to a charitable use. It is elementary that the court's ruling had this effect only if the State was bound by the judgment, but neither principles of res judicata and collateral estoppel nor the State's failure to exercise its statutory right to intervene can make the judgment binding.

A judgment on the merits is conclusive for the parties to the action and, occasionally, for persons who have special relationships to the parties that make it fair for them to be bound. Relitigation of a whole cause of action by the same parties is barred by the doctrine of res judicata; relitigation of an issue is barred by the principle of collateral estoppel. Although collateral estoppel does not require mutuality, estoppel can be invoked only against one of the parties to the action that decided the issue. *Cramer v. General Telephone & Electronics Corp.,* 582 F.2d 259, 266–67 (3d Cir. 1978), *cert. denied,* 439 U.S. 1129, 99 S.Ct. 1048, 59 L.Ed.2d 90 (1979). Because the State is not a party to this action, it cannot be bound either by res judicata or collateral estoppel.

The taxpayer asserts, however, that the State should be deemed to be a party for this purpose, because it was given an opportunity to intervene pursuant to 28 U.S.C. § 2403(b) (1976). This argument, if correct, means that section 2403(b) does not establish a right of intervention but rather an obligation to defend or suffer the consequences. Such a construction is plainly wrong. *See* S. Rep. No. 204, 94th Cong., 2d Sess. 14, *reprinted in* 1976 U.S. Code Cong. & Ad. News 1988, 2001 (statute gives State

option to intervene); H.R. Rep. No. 1379, 94th Cong., 2d Sess. 3 (1976) (same). It is also true as a general matter that mere notice to an interested person is not enough to make a judgment binding. To be deemed a party a person must be subjected to the jurisdiction of the court by being served, appearing in court, or participating in the litigation. Restatement (Second) of Judgments § 34, Comment a (1982); *see Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 329, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788 (1971) ("Due process prohibits estopping [litigants]" who did not appear in prior action.)

Thus the State was not bound by the district court's constitutional ruling, and, accordingly, that ruling did not affect the possibility that the taxpayer will become liable for additional state taxes. In light of the fundamental principles that courts should avoid ruling on constitutional questions when it is unnecessary to do so and that federal courts should not issue advisory opinions, it is plain to me that the district court should have refrained from deciding this issue. *See Poe v. Ullman,* 367 U.S. 497, 502–03, 81 S.Ct. 1752, 1755, 6 L.Ed.2d 989 (1961); *Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 346–47, 56 S.Ct. 466, 482–483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring); cf. *Ensminger v. Commissioner,* 610 F.2d 189 (4th Cir.), *cert. denied,* 446 U.S. 941, 100 S.Ct. 2166, 64 L.Ed.2d 796 (1980) (taxpayer cannot attack constitutionality of state statute making cohabitation illegal in federal refund action based on dependency deduction).

## II.

Judge Garth also gives short shrift to the jurisdictional bar posed by the Tax Injunction Act.[3] I cannot agree that the Act did not deprive the district court of jurisdiction even if the judgment is binding on the State.

Because the Act prohibits a district court from granting either declaratory or injunctive relief from a state tax assessment, *California v. Grace Brethen Church,* —— U.S. ——, ——, 102 S.Ct. 2498, 2508, 73 L.Ed.2d 93 (1982); *Exxon Corp. v. Hunt,* 683 F.2d 69, at 72 (3d Cir. 1982), the Act was inapplicable to this case only if the taxpayer does not have a "plain, speedy and efficient" state court remedy. Judge Garth concludes that the taxpayer lacks an adequate remedy for two reasons: first, although the taxpayer's federal tax liability turns on the constitutionality of the state statute, the taxpayer cannot seek a federal refund in state court; and second, the taxpayer's ability to bring an action in the state courts now to enjoin the possible future collection of additional tax "is at best uncertain." At 416 n. 7.

I concede that two of the premises of Judge Garth's rulings are correct. First, it appears that the taxpayer cannot now bring an action in the state courts because its claim against the State is not ripe, even as a statutory matter. *See* Pa. Stat. Ann. tit. 72, § 2485–1001 (Purdon 1964) (taxpayer may appeal to Court of Common Pleas within sixty days after receiving notice of assessment). Until Katherine Kunkel dies, no one can know whether the rate of tax for transfers to collateral heirs will be applied to the marital trust. And second, the taxpayer cannot sue the United States in state court. Further, I am willing to ignore *Estate of Brooks* and assume for the purpose of analysis that the taxpayer's federal tax liability turns on the resolution of its constitutional challenge to the state statute. I differ from Judge Garth simply because I do not think that these propositions are relevant to the proper inquiry under the Tax Injunction Act.

A "plain, speedy and efficient" remedy is one that "provides the taxpayer with a 'full hearing and judicial determination' at which she may raise any and all constitutional objections *to the tax*." *Rosewell v.*

---

**3.** The Act provides that "[t]he district courts shall not enjoin, suspend nor restrain the assessment, levy or collection of any tax under

State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341 (1976).

*LaSalle National Bank,* 450 U.S. 503, 514, 101 S.Ct. 1221, 1229, 67 L.Ed.2d 464 (1981) (emphasis added). Neither Judge Garth nor the taxpayer contends that the available state remedy would be inadequate to deprive the district court of jurisdiction if the taxpayer had sued the State in federal court.[4] Instead, it is found inadequate because it will not permit the taxpayer to sue the state in time to obtain a federal refund[5] or to sue for a refund in one action.

These asserted deficiencies do not make the state remedy less than "plain, speedy and efficient." "*[P]lain* means 'clear' or 'manifest,' *speedy* means 'quick,' [and] *efficient* means 'characterized by effective activity.'" *Id.* at 516, 101 S.Ct. at 1230. There cannot be any serious contention that the state remedy is not "plain." If it is not "speedy," in Judge Garth's view, that must be because the state remedy is foreclosed until and unless additional tax is assessed, *i.e.,* until and unless the claim ripens. "Speedy," however, is a procedural requirement, which merely distinguishes between ordinary and extraordinary delay in administrative and judicial proceedings. *Id.,* at 519–21, 101 S.Ct. at 1232–1233. Finally, if the state remedy is not "efficient," that must be because the taxpayer cannot sue both the state and the United States in the same action unless a federal forum is available. But efficiency also is a procedural requisite, ensuring only that the state remedy "imposes no unusual hardship . . . requiring ineffectual activity or an unnecessary expenditure of time or energy," *id.* at 518, 101 S.Ct. at 1231. *See also Sipe v.*

*Amerada Hess Corporation,* 689 F.2d 396 at 407 (3d Cir. 1982) (remedy provided by the state need not be coextensive with that available in the federal courts in order for it to be considered "plain, speedy and efficient.")

Unlike Judge Garth, I find nothing anomalous in requiring the taxpayer to wait until its claim ripens and to sue two taxing sovereigns each in its own court. To the contrary, assuming that the district court's judgment binds the State, I think that to permit the taxpayer to proceed now in federal court when its state law claim is not ripe does not give the State the deference it is due in matters of tax administration. *See California v. Grace Brethren Church, supra,* —— U.S. at ——, 102 S.Ct. at 2508; *Fair Assessment in Real Estate Ass'n v. McNary,* 454 U.S. 100, 102 S.Ct. 177, 183–84, 70 L.Ed.2d 271 (1981); *Rosewell v. LaSalle National Bank, supra,* 450 U.S. at 522, 101 S.Ct. at 1233; *Sipe v. Amerada Hess Corporation, supra; Exxon Corp. v. Hunt, supra,* at 72.

*California v. Grace Brethren Church* is instructive. The taxpayers were several churches and religious schools that attacked the collection of California's unemployment insurance tax from them. The challenged state statute was enacted to comply with the "covered" employment requirements of the Federal Unemployment Tax Act, which establishes a cooperative federal-state unemployment compensation program. The taxpayers sued the United States Secretary of Labor, to enjoin him from conditioning approval of the California program on the

---

**4.** Nor could they persuasively do so. Pennsylvania law allows the taxpayer to protest an inheritance tax assessment within sixty days of notice of the assessment, either by notice to the Department of Revenue or by immediate appeal to the Court of Common Pleas. Pa. Stat. Ann. tit. 72, § 2485–1001 (Purdon 1964); *In re Estate of Gillespie,* 462 Pa. 455, 458 n. 3, 341 A.2d 471, 473 n. 3 (1975). The court is empowered to consider all of the taxpayer's objections to the assessment, including "any and all constitutional objections." *See, e.g., In re Cochrane's Estate,* 342 Pa. 108, 20 A.2d 305 (1941); *In re Kelly's Estate,* 336 Pa. 305, 9 A.2d 734 (1939) (per curiam). This procedure is more advantageous to the taxpayer than the schemes held to be "plain, speedy and effi-

cient" in *California v. Grace Brethren Church* and *Rosewell v. LaSalle National Bank,* both of which required the taxpayer to pay the disputed tax and seek a refund through state administrative and judicial proceedings.

**5.** At the time of John Crain Kunkel's death, federal estate taxes had to be paid within fifteen months (now nine months). Act of Aug. 16, 1954, ch. 736, 68A Stat. 751 (current version at I.R.C. § 6075(a)). Although the taxpayer may claim a credit for state taxes paid, the credit is allowed only for taxes paid within four years after the federal return is filed. I.R.C. § 2011(c).

coverage of their employees, and the State, to enjoin it from collecting the tax. The Supreme Court held that the "plain, speedy and efficient" exception did not confer jurisdiction on the district court, even though the taxpayers challenged a federal-state program administered according to federal requirements and some of the defendants were federal officials. The Court reasoned that the federal defendants, who could not be compelled to submit to state jurisdiction, were not necessary parties to the resolution of the state law claim. The Court stated further that even if the taxpayers attacked only the federal act, the district court would not have jurisdiction; because the state statute was drafted to conform to the federal, "a challenge to [the federal act] would be a direct effort to 'enjoin, suspend or restrain' state tax officials from collecting unemployment taxes." —— U.S. at —— & n. 38, 102 S.Ct. at 2513 & n. 38.

The federal and state tax claims raised in *California v. Grace Brethren Church* were tightly interwoven, more tightly than the federal and state tax claims in the case before us, but the Tax Injunction Act was held to deprive the district court of jurisdiction nonetheless. The Court declined to expand the "plain, speedy and efficient" exception, which must be narrowly construed, *id.* at ——, 102 S.Ct. at 2510, in a way that would avail the taxpayer here.

### III.

My conclusion that the district court should not have reached the taxpayer's constitutional claim would mean that the taxpayer may not be able to obtain a refund of its federal estate taxes even if, at the appropriate time, the state courts held the state statute unconstitutional. *See* note 5 *supra.* I suspect that Judge Garth reaches the merits of this case out of a sense that the alternative is unfair. If so, I am in sympathy, but fairness in this context is not ours to determine, since the taxpayer's dilemma is rooted in the different decisions of Congress and the Pennsylvania General Assembly about the time for payment of es-

tate taxes. We can only apply these statutes. It must be the legislatures that amend them if they have consequences that are unfair.

Accordingly, I would direct the district court to dismiss the taxpayer's constitutional claim. I concur only in the result.

FULLAM, District Judge, Sitting by Designation, concurring:

I concur in the result, and in much of what is said in both of the Opinions of the other members of the Panel. The issue in this case is the correct amount of the federal estate tax, not the actual determination of the potential liability for Pennsylvania inheritance tax. The correct calculation of the federal estate tax depends upon whether or not, at the date of decedent's death, there was a non-negligible possibility that the residuary bequest to charity might be further reduced by the ultimate assessment and collection of Pennsylvania inheritance tax on the corpus of the marital trust fund at the rate of 15%, rather than the 6% asserted by the taxpayer. This, in turn, requires a weighing of the probabilities in two respects: (1) the probability that the testator's widow might fail to exercise her powers of appointment, so that the corpus of the marital trust might eventually pass, under the terms of the will, to decedent's stepgrandchildren; and (2) the probability that, if that should occur, a 15% Pennsylvania inheritance tax on the corpus of the marital trust would be payable.

We all agree that the district court correctly decided that there is a non-negligible possibility that the widow might fail to exercise her powers of appointment. And we all agree that this means that the result reached in the district court cannot stand. In Judge Garth's view, this is because Pennsylvania law provides for a 15% tax rate in such situations, and the law is not unconstitutional. In Judge Becker's view, the district court's judgment on this claim does not bind the State, is advisory, because it cannot affect the taxpayer's federal estate tax liability under I.R.C. § 2055, Treas. Reg. § 20.2055–2 and *Estate of Brooks v.*

*Commissioner,* 250 F.2d 937 (3d Cir. 1958), and if the State is bound, the Tax Injunction Act, 28 U.S.C. § 1341 (1976), deprived the district court of jurisdiction.

In my view, the Tax Injunction Act cannot properly be read to preclude a federal court from making the kind of prediction required for determining the correct federal estate tax. Neither does the Tax Injunction Act preclude a federal court, en route to its predictive assessment, from expressing the view that a constitutional challenge to a state inheritance tax statute would be unlikely to succeed. And, while I agree with Judge Becker that § 2055(c) of the Internal Revenue Code requires us, at the very least, to indulge a strong presumption of the validity of state tax laws, I cannot accept an absolutist approach in this area. If, for example, the Pennsylvania inheritance tax statute provided for the higher rate of tax on the estates of decedents of a particular nationality or religious faith, or upon the estates of decedents whose surnames begin with "K", I believe such obvious unconstitutionality could properly be taken into account by a federal court in assessing the probabilities in this context.

In my view, therefore, it would suffice for disposition of the present case to hold merely that the likelihood of a constitutional application of a 15% tax rate in this situation is not so remote as to be negligible. And that ultimate conclusion follows, *a fortiori,* from the fact that, for the reasons stated by Judge Garth in Section IIB of his Opinion, the Pennsylvania statute plainly does not violate the Equal Protection Clause.

I therefore agree that the judgment must be reversed, and the case remanded for further proceedings to consider the computational issues raised by the appellee.